In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-00167-CV


____________________



DALE DARDEAU, Appellant



V.



WEST ORANGE-COVE CONSOLIDATED INDEPENDENT SCHOOL


DISTRICT, O.TAYLOR COLLINS, HARRY BARCLAY,


NANCY BYERS, PETE AMY, and ERIC MITCHELL, Appellees






On Appeal from the 260th District Court


Orange County, Texas


Trial Cause No. D 031184-BC






MEMORANDUM OPINION


 Appellant, Dale Dardeau, appeals a summary judgment granted in favor of appellees,
West Orange-Cove Independent School District ("CISD" or "District"), Superintendent Dr.
O. Taylor Collins (hereinafter "Collins"), Harry Barclay, Pete Amy, Nancy Byers, and Eric
Mitchell (collectively "appellees"). We determine whether the trial court erred in granting
appellees' motion for summary judgment on Dardeau's whistleblower claim and on
Dardeau's state constitutional claims pursuant to article I, sections 8 and 19 of the Texas
Constitution. We affirm.

FACTUAL BACKGROUND


 Dardeau is a former principal of West Orange Stark Middle School. Dardeau, along
with several other former District employees, brought suit in 2003 against the District and
a former Superintendent alleging claims for reverse racial discrimination, retaliation, breach
of contract, and promissory estoppel. In August 2005, Dardeau was reassigned to the
position of Assistant Principal at Anderson Elementary School in West Orange. After such
action, Dardeau filed a First Supplemental Petition in which Dardeau alleged that his
reassignment to the assistant principal position violated the Texas Whistleblower Act and 
his state constitutional rights. Thereafter, the original action was severed into three causes
of action: 1) Dardeau's and another employee's failure to promote claims; 2) six other
District employees' pay disparity claims; and 3) Dardeau's whistleblower lawsuit. This
appeal concerns a final summary judgment granted in favor of all defendants against all
claims asserted in the whistleblower lawsuit.

 In January 2005, Collins became the Superintendent for the District. The District
received, in May 2005, preliminary ratings from the Texas Education Agency ("TEA") of the
District's performance by campus on the Texas Assessment of Knowledge and Skills
("TAKS") test. According to the preliminary report, West Orange Stark Middle School, at
which Dardeau was then serving as campus principal, was rated academically unacceptable. 
Collins received the final TEA report on August 1, 2005, which confirmed that the West
Orange Stark Middle School was the only school in the District that was rated academically
unacceptable. On August 2, 2005, Collins held a meeting with Margaret DuChamp, CISD's
Executive Director of Human Resources, in which Collins and DuChamp discussed the
reassignment of Dardeau to the position of assistant principal at Anderson Elementary
School. 

 On August 3, 2005, Dardeau telephoned the TEA's Assessment Division and
informed them of his belief that thirty-eight fifth grade students at West Orange Stark Middle
School had been "socially promoted" from the fifth to sixth grade within the District. 
According to Dardeau, the TEA representative asked Dardeau "to gather more information." 
That same morning, Dardeau sent an email to several elementary school principals regarding
the social promotion issue. Dardeau also sent a copy of the email to Jane Stephenson,
CISD's Director of Curriculum, and Collins. Dardeau's email stated the following:

 As of today, 33 5th graders that failed TAKS 3 times have been
promoted to the 6th grade. I need a copy of the committee's minutes detailing
the extenuating circumstances justifying their promotion. I have talked to the
TEA today and they find it very difficult to see how that many students can
meet the definition of extenuating circumstances.


 Your immediate response is needed for our proper scheduling will be
appreciated. [sic]



 The following day on August 4, 2005, Collins notified Dardeau that he was being
reassigned to the position of assistant principal at Anderson Elementary School. The primary
reason given for the reassignment was the middle school's rating of "academically
unacceptable." Collins stated he believed a change in the leadership of the middle school
principal was necessary. The evidence in the record regarding whether Collins was aware
of Dardeau's call to the TEA at the time of Dardeau's demotion is disputed.

 After learning of his reassignment, Dardeau tendered an indefinite medical excuse
stating that he was unable to work. Dardeau did not work during the 2005-2006 school year,
however, he did receive his full salary. Dardeau returned to work as assistant principal at
Anderson Elementary School at the beginning of the 2006-2007 school year. As a result of
various job performance issues, Dardeau's contract was "nonrenewed" by the Board of
Trustees on April 30, 2007. Dardeau retired in June 2007 and began receiving a pension. 
PROCEDURAL BACKGROUND


 The case was originally set for trial in July 2007. In June 2007, Dardeau amended his
lawsuit, adding his nonrenewal as a second whistleblower claim, adding four individual
Board members as defendants, and federal constitutional claims. The District removed the
case to federal court, however, shortly thereafter, Dardeau filed Plaintiff's Third Amended
Original Complaint in federal court, dropping his federal claims and ultimately causing the
case to be remanded back to state court. On November 13, 2007, after the case was
remanded, appellees filed a Motion for Summary Judgment on all causes of action asserted
by Dardeau. Following a hearing on the motion, the trial court granted appellees' Motion for
Summary Judgment in its entirety. The following day, Dardeau voluntarily nonsuited all
claims based on any facts or incident arising after September 1, 2006, effectively nonsuiting
all his nonrenewal claims. 

 Dardeau appeals the trial court's judgment on the following two grounds:

 1. The trial court erred when it granted Defendants Motion for Summary
Judgment on Plaintiff/Appellant's whistleblower claim because a
genuine issue of material fact remains as to the claim.


 2. Did the trial court err when it granted Defendants Motion for Summary
Judgment as to Appellant's State Constitutional Claims pursuant to
Article I §§ 8 & 19.


STANDARD OF REVIEW



 We review the granting of a traditional motion for summary judgment de novo. 
Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). We must
determine whether the movant carried its burden to establish that there existed no genuine
issue of material fact and that it was entitled to judgment as a matter of law. Shah v. Moss,
67 S.W.3d 836, 842 (Tex. 2001). In determining whether the movant carried its burden, we
assume all evidence favorable to the nonmovant is true, indulge every reasonable inference
in favor of the nonmovant, and resolve any doubts in his favor. Am. Tobacco Co. v. Grinnell,
951 S.W.2d 420, 425 (Tex. 1997). "Because the trial court's order does not specify the
grounds for its summary judgment, we must affirm the summary judgment if any of the
theories presented to the trial court and preserved for appellate review are meritorious." 
Knott, 128 S.W.3d at 216. 

WHISTLEBLOWER CLAIM


 A public employee suing under the Whistleblower Act has the burden of proof. Tex.
Gov. Code Ann. § 554.004(a) (Vernon 2004). The employee must prove, among other
things, that he "suffered discriminatory or retaliatory conduct by the employer that would not
have occurred when it did if the employee had not reported the violation of law." City of
Fort Worth v. Johnson, 105 S.W.3d 154, 162-63 (Tex. App.--Waco 2003, no pet.) (citing
City of Fort Worth v. Zimlich, 29 S.W.3d 62, 67 (Tex. 2000)). This causation standard has
been interpreted as a "but for" causal requirement. Hurley v. Tarrant County, 232 S.W.3d
781, 786 (Tex. App.--Fort Worth 2007, no pet.). Therefore, an employee must establish that
"but for" his reported violation of law the discriminatory conduct would not have occurred
when it did. Johnson, 105 S.W.3d at 163. However, the employee need not establish that
the reported violation of law was the sole cause of the employer's discriminatory action. Id. 
 The Whistleblower Act creates a presumption of causation when the employee is
terminated or suspended not later than ninety days after the reported violation. Tex. Gov.
Code Ann. § 554.004(a). However, the presumption is rebuttable. Id. The statutory
presumption does not shift the burden of proof and will stand only in the absence of evidence
to the contrary. Johnson, 105 S.W.3d at 163. If the Defendant produces evidence sufficient
to support a finding of the nonexistence of the causal connection, the case proceeds as if no
presumption ever existed. Id. Thus, the presumption will not aid an employee once the
presumption has been rebutted by evidence to the contrary. Id. If the Defendant rebuts the
statutory presumption, the employee must produce some evidence to support a causal
connection between the reported violation and the discriminatory conduct by the employer. 
Id. 

 It is an affirmative defense under the statute that the employer "would have taken the
action against the employee that forms the basis of the suit based solely on information,
observation, or evidence that is not related to the fact that the employee made a report
protected" under the Act. Tex. Gov. Code Ann. § 554.004(b). 

 On appeal, appellees argue in part that they conclusively proved each element of their
affirmative defense to appellant's whistleblower claim. "A matter is conclusively established
if ordinary minds could not differ as to the conclusion to be drawn from the evidence." 
Adams v. Groesbeck Indep. Sch. Dist., No. 10-02-313-CV, 2003 WL 22708642, at *3 (Tex.
App.--Waco Nov. 12, 2003, pet. denied) (not designated for publication). The District
contends that Dardeau would have been reassigned to the assistant principal position at
Anderson Elementary as a result of the school's academically unacceptable performance
regardless of whether he had contacted the TEA. To counter this argument, Dardeau 
submitted evidence as to the timing of Collins's decision from several District employees. 
Evidence submitted by the District relating to Collins decision to reassign Dardeau


 In support of its affirmative defense and as part of its summary judgment evidence,
the District submitted an affidavit from Collins, an affidavit from Jane Stephenson,
handwritten notes taken by Margaret DuChamp during a meeting with Collins, testimony
from the President of the Board of Trustees, Harry Barclay and Board member Pete Amey. 
 Collins stated in his affidavit that when he became Superintendent of the District in
January 2005, he realized "[t]he District faced unique challenges because of its diverse
population and a large percentage of socioeconomically disadvantaged students." Collins
stated that early in his tenure as Superintendent, he had several parents come to him with
"concerns about the treatment of their students at the middle school on issues of fairness,
respect, and consistency," but these complaints were not sufficiently severe to warrant
documentation of any discipline of Dardeau. Additionally, Collins had several parents to
approach him with concerns regarding the academic standing of the campus. According to
Collins, Dardeau had been placed on growth plans on two prior occasions by two of his
Superintendent predecessors following instances where Dardeau had exhibited racial
insensitivity and made public comments demonstrating racial bias. 

 Collins came to believe that Dardeau "disregard[ed] student needs in favor of his own
personal desire to control the middle school campus . . . ." One of Collins's goals for the
District was to develop a culture of excellence and he believed that he and Dardeau
"seem[ed] to have philosophical differences on how to achieve this goal." Collins stated that 
it had become apparent soon after he was hired that significant changes were going to be
necessary to move the District forward in a positive direction. "With the added concerns
created by the TEA's Academically Unacceptable rating of Mr. Dardeau's campus, it became
apparent that his assignment must change." 

 In May 2005, Collins received the preliminary TEA ratings of the District's
performance on the TAKS test by campus. Dardeau's campus was the only school to be
rated academically unacceptable. The rating reflected a decline in attendance and test scores. 
Collins stated that he was "shocked by the disparity between white and minority student
performance for Dardeau's campus." In a memorandum sent to the Beaumont Enterprise on
May 16, 2005, Collins stated:

 In all truth, however, our scores in mathematics and science are dismal and
unacceptable. Emblematic of the problem is middle school mathematics. Only
twenty-five percent of eighth graders passed the test and met the standard in
mathematics; only 38% of seventh graders met the standard; and 44% of the
sixth graders passed the test. 


 The great moral tragedy is that of the 135 African American students who took
the test, only 18%, or 24 students, passed it. Swift, protracted, and research-based actions must be taken immediately to right this great wrong. And, as a
Superintendent new to the district, I am bound and determined to provide the
leadership to achieve justice in the system. 


Collins further stated in his affidavit that "[i]t was apparent to me, following my review of
the preliminary TEA report, that my fears concerning Mr. Dardeau's lack of attention to
scholastic performance were in fact true, and it became equally apparent that an immediate
change at the helm of the West Orange Stark Middle School was necessary." Collins also
considered various placement options for Dardeau over the summer of 2005 and discussed
several possibilities with the District's Board President, Harry Barclay. The statements made
in Collins's affidavit were corroborated by Barclay's deposition testimony. 

 Barclay testified in his deposition that Collins "had been contemplating for a couple
of months having to make a change on [the middle school] campus." Barclay testified that
Collins first discussed the issue with him after he received the preliminary TAKS scores. 
According to Barclay the test scores at the campus had been "low for some time" and Collins
told Barclay he was concerned with the unacceptable TAKS scores and "he didn't believe
that progress was going to be made and he thought he needed to -- to make a change in the
leadership on the campus in order to improve things[.]" While Barclay could not recall the
specifics of past conversations on the issue, Barclay was under the impression that the low
test scores and Dardeau's leadership had been a concern for prior Superintendents as well. 
 Barclay testified that Collins had been considering removing Dardeau from the
principal position at the middle school and "was trying to make up his mind what to do." 
Barclay believed that by May or June 2005, Collins "had decided that he had to make a
change in the principal's job" and was pondering the question of "what does he do with Dale
Dardeau." According to Barclay, Collins "was contemplating possibly moving [Dardeau
into] some administrative position and -- and putting a new principal in there or, as he ended
up deciding to do, putting him into an assistant principal position." Barclay stated that he and
Collins discussed the issue several times over the course of a couple of months. However,
Barclay was unaware that Collins had made a final decision before Dardeau was reassigned. 
 Pete Amy, CISD Board of Trustees member, also testified that he and Barclay had
discussed Collins's decision to reassign Dardeau before it happened. According to Amy, the
week before Dardeau was reassigned, Barclay told Amy that Dardeau was going to be
transferred. 

 Collins received the final TEA report on August 1, 2005. The report confirmed that
West Orange Stark Middle School was the only school in the District which was rated as
academically unacceptable. Collins stated, 

 [b]ecause of Mr. Dardeau's expressed lack of concern and his apparent
disinterest in turning around these declining academic ratings, I began
considering in earnest where I could place Mr. Dardeau in a position of
administrative responsibility with similar duties and level of responsibility, but
where he would not need to be the lead person responsible for assuring campus
academic performance. 


Collins also gave thought to who might take over as principal of the middle school. Collins 
made the decision to transfer Dardeau to an assistant principal position at Anderson
Elementary School. 

 On August 2, 2005, Collins held a meeting with Margaret DuChamp, the District's
Executive Director of Human Resources, in which the two discussed reassigning Dardeau
to the assistant principal position at Anderson Elementary. Handwritten notes of the same
date, taken by DuChamp during the meeting, were produced confirming the meeting and
discussion of Dardeau's reassignment to Anderson Elementary. The handwritten note states,
"Move Dale to AP-Anderson, demotion-unacceptable rating." Collins further stated,
"[w]hen I decided to transfer Mr. Dardeau on August 2, 2005, I had been contemplating his
reassignment for several months. I had discussed the transfer with the Board President,
Harry Barclay, on numerous occasions, between May and August 2005." 

 With respect to Collins's knowledge of Dardeau's report to the TEA and his decision
to reassign Dardeau, Collins stated:

 I don't recall learning about Mr. Dardeau's allegation that he had contacted the
Texas Education Agency until sometime in the vicinity of when he filed his
First Supplemental Petition in this lawsuit, which was on or about August 15,
2005. 


 No one from the TEA ever contacted anyone from the District about any
allegation that the District was improperly "socially promoting" fifth graders. 
In fact, in the 2005-2006 Academic Excellence Indicator System (AEIS)
report, the District's promotion of fifth graders under Tex. Educ. Code §
28.0211 is reflected as statistically insignificant.


 I used my best judgment and discretion in making the decision about Mr.
Dardeau's transfer because of the Academically Unacceptable rating the
middle school campus received, taking into consideration the concerns which
middle school parents had voiced to me about the campus and Mr. Dardeau. 
As soon as I received the TEA's final results, I knew the change I had been
contemplating for several months was required. 


The District also offered evidence showing the email Dardeau sent to Collins on the morning
of August 3, 2005, regarding his report to the TEA which was marked unread. Barclay
likewise stated in his affidavit that no one from the TEA ever contacted any member of the
Board of Trustees regarding Dardeau's report that the District was "socially promoting"
students. 

 Jane Stephenson stated in her affidavit that after receiving the preliminary TAKS
scores for West Orange Stark Middle School, Collins told Stephenson that he was shocked
by the disparity between white and minority student performance for the middle school. 
Stephenson admitted receiving Dardeau's August 3, 2005, email but, did not recall when
and, stated that '[n]o one from the TEA had ever contacted anyone from the District about
any allegation that the District was improperly "socially promoting" fifth graders." 
According to Stephenson, 

 [a]s the District's Director of Curriculum, I would have been immediately
notified if TEA had questioned the District's Grade Placement Committee
procedures. 


 In accordance with 19 Texas Administrative Code Rule 101.2017(b)(3), the
District timely submitted the information about the percentage of students
promoted through the Grade Placement Committee process under Texas
Education Code § 28.0211 in the fall of 2005. In the 2005-2006 Academic
Excellence Indicator System (AEIS) report, the District's promotion of fifth
graders under Tex. Educ. Code §28.0211 is reflected as statistically
insignificant. 

 

Evidence submitted by Dardeau relating to Collins's decision to reassign Dardeau 



 Dardeau responded to the District's affirmative defense arguing that appellees failed
to prove all the elements of its affirmative defense as a matter of law, but instead, a fact issue
remained on the element of causation under Dardeau's whistleblower claim. Dardeau first
argues that the TAKS test scores were not the sole reason for Dardeau's reassignment. 
However, the District need not prove that the TAKS scores were the sole reason for
Dardeau's reassignment in order to prevail under their affirmative defense. Rather, the
District had only to conclusively establish that it would have taken the action against Dardeau
"based solely on information, observation, or evidence that is not related" to Dardeau's report
to the TEA. Tex. Gov. Code Ann. § 554.004(b).

 Second, Dardeau argues it was not the policy of the District to demote principals for
first time poor test scores but rather to put principals on "growth plans." However, Dardeau
points to no formal District policy or procedure requiring or suggesting that a principal
should be placed on a growth plan for first time poor test scores. (1) In addition, the summary
judgment record established that Dardeau had previously been placed on growth plans for
other issues related to his leadership of the middle school campus. The District submitted
evidence in its Motion for Summary Judgment that Dardeau's reassignment was not only
consistent with the Texas Education Code but was also authorized by Dardeau's contract and
District policy. 

 On appeal, Dardeau attempts to rely upon the affidavit of Kathleen Rogers, another
District employee. However, the record reflects this affidavit was objected to by the District
as hearsay and the trial court granted the District's objections, excluding the affidavit from
the evidence considered by the trial court. Dardeau urges this Court to consider the
affidavit, irrespective of the fact that it was excluded by the trial court, because it appears 
in the record as an attachment to a prior motion. However, even if we were to consider this
affidavit, we find that it corroborates Collins's statement that he made the decision to
reassign Dardeau prior to Dardeau's report to the TEA.

 In said affidavit, Kathleen Rogers stated that she and Anitrea Goodwin applied for the
position of principal at Bancroft Elementary school, and were both interviewed on August
1, 2005. On August 2, 2005, it was announced that another candidate had been appointed
as principal at Bancroft Elementary. Rogers stated that she was disappointed, but that
Goodwin was very disappointed and upset. According to Rogers, Collins called Goodwin
on the night of August 2, 2005, and told her not to be upset, not to worry, and to come by and
see him the next day. According to Rogers, when Goodwin went to the meeting on August
3, 2005, Collins stated that he would find a place for her, and that there would be a place for
her in the District. Following Dardeau's reassignment on August 4, 2005, Goodwin was
informed that she would act as interim principal of the middle school. Dardeau argues that
the timing of Goodwin's meeting with Collins on August 3, 2005, suggests that Collins did
not decide to reassign Dardeau until he received Dardeau's email on the morning of August
3. However, Roger's affidavit reflects that Collins scheduled his August 3 meeting with
Goodwin on August 2, the same day Collins met with DuChamp and finalized his decision
to demote Dardeau to the assistant principal position at Anderson Elementary School. We
find Dardeau's reliance on Rogers's affidavit both improper and unpersuasive.

 To counter the District's contention that Dardeau's August 3, 2005, email was marked
unread in Collins's email inbox and therefore, Collins had no knowledge of Dardeau's phone
call, Dardeau offered the testimony of Ira Wilsker, a computer expert, who testified that an
email being marked unread does not prove that the recipient did not open or has not seen the
email's contents because Outlook allows a user to mark emails unread even after they have
actually been viewed. In addition, Outlook has a preview screen to allow a user to view the
contents of an email without opening it. 

 To further show Collins had knowledge of Dardeau's email, Dardeau also submitted
an affidavit from Jamie Wilson, another District employee, who stated that after she received
Dardeau's email she immediately forwarded the email to Collins and contacted Stephenson,
who told her that Collins was aware of what was going on. Stephenson set up a meeting with
Wilson the following morning to review applicable procedures for promoting fifth graders. 
There is no evidence in the record that Collins attended the meeting. When asked in his
deposition whether he remembered having the subject of Dardeau's August 3 email discussed
with him, Collins stated, "I remember generally that Jane brought to me the concern or what
was happening at that time, and my instructions to all principals and to -- to Jane was to
ensure that the law [was] firmly followed." 

Conclusion 


 Whether or not Collins was aware of Dardeau's phone call to the TEA at the time of
Dardeau's reassignment, assuming all evidence favorable to Dardeau is true, the trial court
could reasonably have found that the District conclusively established its affirmative defense
as a matter of law. The evidence in the summary judgment record conclusively establishes
that Collins began contemplating Dardeau's reassignment when he received the preliminary
TAKS scores in May 2005 and contemplated that decision for several months until he
received the final test scores from the TEA on August 1, 2005. (2) The evidence further
establishes that Collins held a meeting with the Executive Director of Human Resources on
August 2, 2005, in which he finalized his decision to reassign Dardeau to the assistant
principal position at Anderson Elementary, as a result of the middle school's academically
unacceptable rating and Collins's belief that a change in leadership was necessary to remedy
the school's poor academic performance. This decision was reflected in the Executive
Director's handwritten notes of that meeting. This decision was also corroborated by the
testimony of Board President Barclay. 

 There is no evidence that Dardeau ever followed-up on his request for information or
spoke with the TEA again regarding the matter or that anyone from the TEA ever contacted
the District regarding Dardeau's allegation that the District was "socially promoting" 5th
grade students. While Collins may have been aware of Dardeau's phone call to the TEA on
the morning of August 3, 2005, there is nothing in the record to suggest that phone call was
significant to Collins or played any part in his decision to reassign Dardeau to the assistant
principal position at Anderson Elementary. 

 The record establishes that the trial court could reasonably have found the District
established as a matter of law that Dardeau would have been reassigned on August 4, 2005,
based on information and observations wholly unrelated to Dardeau's phone call to the TEA
on August 3, 2005. Therefore, we overrule issue one. 

CONSTITUTIONAL CLAIMS


 Dardeau further complains on appeal that the trial court erred when it granted
summary judgment on his claim that the District violated his constitutional rights under
article I, sections 8 and 19 of the Texas Constitution. See Tex. Const. art. I, §§ 8, 19. 
Specifically, Dardeau alleged that his right to exercise protected expression (as well as
protected liberty interest) was violated by the District after he reported the alleged illegal
social promotion of fifth grade students at West Orange Stark Middle School to the TEA. (3) 
Appellees contend in their Motion for Summary Judgment that Dardeau nonsuited his Texas
Constitutional claims, but filed summary judgment on these claims in an abundance of
caution in case they were still pending. Appellees further assert that Dardeau never pled
sufficient facts to assert a cause of action that the District violated his rights under the Texas
Constitution. Appellees cite Garcetti v. Ceballos, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d
689 (2006), for the proposition that "any actions [Dardeau] took which form the basis of his
constitutional claims were undertaken while he was performing his official duties as principal
of West Orange Stark Middle School," preventing equitable relief under those claims. Dardeau did not specifically address to the District's arguments regarding his
constitutional claims, other than asserting that his job description "would clearly exclude him
from the narrowest of readings of . . . Garcetti v. Ceballos." On appeal, Dardeau states that
his constitutional claims are based on his demotion to the assistant principal job at Anderson
Elementary. 

 The Texas Supreme Court has not recognized a private right of action for damages for
violations of one's state constitutional rights. See City of Beaumont v. Bouillion, 896 S.W.2d
143, 148-49 (Tex. 1995) (free speech and free assembly clauses); Univ. of Tex. Sys. v.
Courtney, 946 S.W.2d 464, 469 (Tex. App.--Fort Worth 1997, writ denied) (due process
clause); see also Jackson v. Houston Indep. Sch. Dist., 994 S.W.2d 396, 400-01 (Tex. App.--Houston [14th Dist.] 1999, no pet.) (Texas Supreme Court's holding in Bullion not limited
to the constitutional provisions at issue there). Equitable relief is the only relief available for
violation of one's state constitutional rights. See City of Elsa v. M.A.L., 226 S.W.3d 390, 392
(Tex. 2007). Dardeau sought, as his only remedy for this claim, a permanent injunction
reinstating Dardeau as principal of West Orange Stark Middle School and restraining the
District from further violating Dardeau's constitutional rights. 

 On April 9, 2007, Collins recommended to the District's Board of Trustees that
Dardeau's term employment contract be proposed for nonrenewal based on conduct unrelated
to his phone call to the TEA. The Board voted to propose Dardeau's nonrenewal. Dardeau
received notification of his proposed nonrenewal on April 9, 2007. He was informed that he
had fifteen days from the day he received the letter to request a hearing. No hearing was
requested within the applicable time frame. On April 30, 2007, the Board of Trustees voted
unanimously to nonrenew Dardeau's term contract of employment with the District, effective
June 30, 2007. Thereafter, Dardeau submitted a request to retire from West Orange-Cove
CISD. Dardeau's retirement was effective at the end of June 2007. 

 The trial court granted summary judgment on Dardeau's nonrenewal as it relates to
his whistleblower claim as a cause of action under the Texas Whistleblower statute, and
Dardeau does not challenge that ruling on appeal. Following the trial court's grant of
summary judgment in this case Dardeau nonsuited any claims related to his 2007 nonrenewal. 
 Dardeau's employment contract with the District was nonrenewed on other grounds
two years after his reassignment to the assistant principal position at Anderson Elementary. 
Dardeau is no longer contesting the nonrenewal of his contract, and that decision has become
final. In addition, Dardeau subsequently retired from the District. Therefore, we need not
address the merits of Dardeau's constitutional challenges as they are now moot. See
generally City of Alamo v. Montes, 934 S.W.2d 85 (Tex. 1996) (Secretary's claim that she
was discharged for political reasons, for which she had been awarded an injunction requiring
her reinstatement, was rendered moot on appeal when she resigned from employment); see
also Wilson v. West Orange-Cove Consolidated Indep. Sch. Dist., No. 09-08-00068-CV,
2008 WL 5622697 (Tex. App.--Beaumont Feb. 12, 2009, pet. denied) (appeal by former
district employee from trial court's dismissal of action seeking injunctive and declaratory
relief for nonrenewal was moot because nonrenewal had become final). We overrule issue
two. (4) Having overruled both issues on appeal, we affirm the final judgment of the trial court.

 AFFIRMED. 


 __________________________________

 CHARLES KREGER

 Justice


Submitted on March 3, 2009 

Opinion Delivered July 30, 2009



Before McKeithen, C.J., Kreger and Horton, JJ.
1. While Dardeau produced evidence that another principal in the District had been
placed on a growth plan at least in part for low test scores, those low test scores were not
academically unacceptable. In that instance the primary reason for placing the principal on
the growth plan was an issue related to the special education at the school as well as the
school's low test scores, which received a rating of acceptable as opposed to a rating of 
recognized or exemplary. In addition that action was taken by a prior superintendent, not
Collins. 
2. Collins's affidavit appears to be inconsistent in that he states "[a]fter I received the
TEA accountability rating on August 1, 2005, I decided to transfer Mr. Dardeau to an
assistant principal position at Anderson Elementary School" and then later states "I decided
on August 2 that Mr. Dardeau would be transferred to Anderson Elementary, and shortly
thereafter, I talked with Anitrea Goodwin . . .." However, while Collins may have misstated
the dates or been unclear in his affidavit, he clearly testifies that he made that decision on or
around August 1st or 2nd after receiving the TEA accountability rating, prior to Dardeau's
phone call to the TEA. 
3. Specifically, Dardeau alleged in pertinent part that he "exercised protected expression
under Article One, Section 8, (also a protected liberty interest under Section 19) of the []
Texas Constitution when he . . . made a citizen's report of perceived social promotion or
promotion in violation of the laws to the TEA/SSI; and reported to Collins and Stephenson
the same, informing the Elementary Principals of the same . . .." He further alleged that he
had a "protected liberty and property interests in . . . criticizing the Superintendent-currently
Collins-on his violation of state law or rules governing personnel assignment, and student
promotion." 
4. We have not considered the appendices to appellant's reply brief in rendering this
decision. Therefore, we decline to rule on Appellees' Motion to Strike. See Derwen
Resources, LLC v. Carrizo Oil & Gas, Inc., No. 09-07-00597-CV, 2009 WL 6141597, at *6
n.3 (Tex. App.--Beaumont May 21, 2009, no pet. h.).