James **HURLEY**, Appellant

v.

**TARRANT COUNTY and Jack Allen, In His Official Capacity,** Appellees.

No. 2–05–424–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 2, 2007.

Lee & Braziel, LLP, Robert (Bobby) G. Lee and Teena Mathew, Dallas, for Appellant.

Tim Curry, Dist. Atty., Robert D. Browder and Christopher W. Ponder, Asst. Attys. Gen., Fort Worth, for Tarrant County, and Jack Allen.

PANEL B: CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

## OPINION

ANNE GARDNER, Justice.

This is a an appeal from a summary judgment in a whistleblower case. The trial court granted summary judgment in favor of Appellees Tarrant County and Constable Jack Allen on Appellant James Hurley's wrongful-termination claim, and Hurley appealed. We affirm.

## I. Background

Hurley is a certified peace office with approximately thirty years' experience with various law enforcement agencies. In 1997, he went to work as a deputy constable for Tarrant County Constable Jack Allen.

In February 1998, 1999, and 2000, Hurley received high job-performance scores from Chief Deputy Constable Ronnie Thompson: 4.83 out of a possible 5.00 points in 1998, 4.9 in 1999, and 4.9 in 2000. In 2001, his score fell to 3.94. The December 2001 performance review noted that Hurley needed to improve his "stress management—temper control."

On October 12, 2001, Allen gave Hurley a written "Notice of Disciplinary Action And Termination Warning." The warning recounted a September 2001 episode when Hurley lost his temper and shouted insults at Allen while speaking with him outside Allen's home when Hurley was on duty. The notice cited Hurley for insubordination and conduct unbecoming an officer, recounted several other instances of unprofessional conduct on Hurley's part, and suspended him for three days without pay. Allen advised Hurley in the notice, "Jim, you have got to take control of your temper and exhibit a professional attitude. ... If you have [a] further temperamental outburst, you are warned that you may be subjected to further forms of discipline up to and including termination." [Emphasis in original.]

On October 4, 2002, Allen terminated Hurley's employment. In the written termination notice, Allen recited as grounds for termination several instances of alleged misconduct by Hurley in the course of performing his job duties including, among others:

- the incident that led to the October 2001 warning;
- an incident in September 2002 when Hurley served a writ of sequestration and allegedly threatened to rip a door off its hinges to gain access to the subject property;
- an incident in May 2002 when Hurley served a writ of execution and allegedly threatened to put his foot through the property owner's front door and "auction off everything in her home"; and
- an incident in September 2002 when Hurley executed a capias warrant after Allen specifically ordered Hurley not to involve himself in the execution of that warrant.

Hurley appealed to the Tarrant County Civil Service Commission, and the Commission unanimously upheld his termination.

Hurley sued Tarrant County and Allen[1] for retaliatory discharge under the Texas

1. Hurley sued Allen in his individual and official capacities but later nonsuited his claims against Allen in his individual capacity.

Whistleblower Act[2] and 42 U.S.C.A. § 1983. He contends that Allen fired him not for the reasons stated in the termination notice but in retaliation for reporting two violations of law allegedly committed by Allen. First, Hurley alleged that in June 2001, while he and Allen were serving a writ of execution on a business, Allen removed a box of t-shirts from the business's premises. Hurley alleged that he reasonably believed Allen committed theft when he took the shirts, and he reported Allen's actions to Chief Deputy Constable Ronnie Thomson. Thompson reported Hurley's allegations back to Allen.

Second, Hurley alleged that in April 2002, he observed Allen engage in "electioneering" by speaking to an unidentified person at an early-voting site. Again, Hurley reported Allen's actions to Thompson, and again, Thompson reported Hurley's allegations back to Allen.

Allen and the County filed a combined no evidence and traditional motion for summary judgment. The trial court granted summary judgment in favor of Allen and the County, and Hurley filed this appeal.

## II. Standard of Review

When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court's judgment under the standards of rule 166a(i). TEX.R. CIV. P. 166a(c), (i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the appellant failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether appellees' summary judgment proof satisfied the less stringent rule 166a(c) burden. *Ridgway*, 135 S.W.3d at 600.

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. TEX.R. CIV. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.; Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex.2002). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* TEX.R. CIV. P. 166a(i) & cmt.; *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002).

When reviewing a no evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no evidence summary judgment is not proper. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied).

Under rule 166a(c), a defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *see* TEX.R. CIV. P. 166a(b), (c). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *IHS Cedars Treatment Ctr.*, 143 S.W.3d at 798.

## III. Whistleblower Claim

■ In his first issue, Hurley argues that the trial court erred by granting summary judgment on his whistleblower claim.

2. TEX. GOV'T CODE ANN. § 554.001–.010 (Vernon 2004).

■ The Whistleblower Act prohibits the suspension or termination of "a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." Tex. Gov't Code Ann. § 554.002. A public employee who sues under the Whistleblower Act has the burden of proof. *Id.* § 554.004(a). The employee must demonstrate all elements of the action, including causation, by a preponderance of the evidence. *City of Fort Worth v. Zimlich,* 29 S.W.3d 62, 67 (Tex.2000).[3]

■ To show causation, a public employee must demonstrate that after he reported a violation of the law in good faith to an appropriate law enforcement authority, the employee suffered discriminatory conduct by his employer that would not have occurred when it did if the employee had not reported the illegal conduct. *Id.* (citing *Tex. Dep't of Human Servs. v. Hinds,* 904 S.W.2d 629, 633 (Tex.1995)). This causation standard has been described as a "but for" causal nexus requirement. *Rogers v. City of Fort Worth,* 89 S.W.3d 265, 280 (Tex.App.-Fort Worth 2002, no pet.) An employee need not prove that his reporting of the illegal conduct was the sole reason for the employer's adverse action. *Hinds,* 904 S.W.2d at 636; *Rogers,* 89 S.W.3d at 280.

■ Circumstantial evidence may be sufficient to establish a causal link between the adverse employment action and the reporting of illegal conduct. *Zimlich,* 29 S.W.3d at 69; *Harris County v. Vernagallo,* 181 S.W.3d 17, 25 (Tex.App.-Houston [14th Dist.] 2005, pet. denied); *Rogers,* 89 S.W.3d at 280. Circumstantial evidence in this type of case includes the following:

(1) knowledge of the report of illegal conduct;

(2) expression of a negative attitude toward the employee's report of the illegal conduct;

(3) failure to adhere to established company policies regarding employment decisions,

(4) discriminatory treatment in comparison to similarly situated employees; and

(5) evidence that the stated reason for the adverse employment action is false.

*Zimlich,* 29 S.W.3d at 69; *Vernagallo,* 181 S.W.3d at 25; *Rogers,* 89 S.W.3d at 280. "But evidence that an adverse employment action was preceded by a superior's negative attitude toward an employee's report of illegal conduct is not enough, standing alone, to show a causal connection between the two events. There must be more." *Zimlich,* 29 S.W.3d at 69.

Allen and the County challenged the causation element of Hurley's whistleblower claim in the no evidence portion of their motion for summary judgment. On appeal, Hurley argues that he presented some circumstantial evidence of causation under the first and second *Zimlich* elements.

First, Hurley points to Chief Deputy Ronnie Thompson's testimony as evidence that Allen knew Hurley had reported his alleged illegal conduct. Thompson testified that Hurley complained to him that Allen had taken a box of t-shirts from the premises of a business where Hurley was

3. If the adverse employment action made the basis of the suit occurred with ninety days of the date when the employee reported illegal conduct, the Act creates a rebuttable presumption that the adverse action was caused by the employee's report. Tex. Gov't Code Ann. § 554.004(a). The presumption does not apply here because Allen terminated Hurley more than ninety days after Hurley reported Allen's allegedly illegal conduct.

executing a judgment and that Thompson told Allen about Hurley's allegation. This is some evidence that Allen knew of Hurley's report about the alleged theft of the t-shirts. But Thompson testified that he could not remember Hurley reporting Allen's alleged electioneering to him. Instead, he testified that he personally saw Allen standing next to a voter at a voting booth and cautioned Allen about speaking to voters in the voting area of the polling place. Thus, Thompson's testimony is no evidence that Allen knew of Hurley's electioneering report.

Second, Hurley points to the contrast between the positive job evaluations and commendations he received before he reported Allen's alleged illegal conduct with the reprimands he received after he made his reports as evidence of Allen's expression of a negative attitude toward Hurley's reports. In February 1998, Chief Deputy Thompson gave Hurley an annual job-performance rating of 4.83 out of a possible 5.00 points. He gave Hurley ratings of 4.9 in December 1999 and December 2000, but a rating of 3.94 in December 2001—after Hurley reported the alleged t-shirt theft. The December 2001 performance review noted that Hurley needed to improve his "stress management—temper control."

■ As further evidence of Allen's expression of a negative attitude toward his reports, Hurley points to the testimony of Deputy Constable Fred Rogers. Rogers testified that he overheard Allen say he "had a cancer in his office and was going to cut that cancer out" sometime in 2002. Rogers thought Allen was talking about Hurley, but he admitted Allen did not mention Hurley's name and his conclusion that Allen was speaking of Hurley was mere speculation. Speculation is not evidence. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 164 (Tex.2004). Thus, there is no evidence that Allen was

speaking of Hurley, and Rogers's testimony is no evidence of Allen's expression of a negative attitude toward Hurley's reports.

In summary, Hurley presented some evidence that Allen knew of his report to Thompson of the alleged t-shirt theft and some evidence that his job performance evaluations declined after he made his reports. This is some evidence of the first and second factors of the *Zimlich* circumstantial evidence test.

But that evidence, standing alone, is not enough to raise a genuine issue of material fact on causation. As we noted above, the supreme court stated in *Zimlich* that "evidence that an adverse employment action was preceded by a superior's negative attitude toward an employee's report of illegal conduct is not enough, standing alone, to show a causal connection between the two events. There must be more." *Zimlich*, 29 S.W.3d at 69. Evidence of a supervisor's negative attitude toward an employee's report of illegal conduct presupposes the supervisor's knowledge of the report; thus, the second *Zimlich* factor presupposes and subsumes the first. If evidence of a superior's negative attitude toward an employee's report is not enough to raise a fact issue on causation, then that evidence coupled with evidence that the supervisor knew about the report is not enough, either.

Here, Hurley presented some evidence of the first and second *Zimlich* factors only. We hold that his summary judgment evidence did not raise a fact issue on the question of causation. Therefore, the trial court did not err by granting Allen and the County's motion for summary judgment with regard to Hurley's whistleblower claim, and we overrule Appellant's first issue.

## IV. Civil Rights Claim

■ In his second issue, Hurley argues that the trial court erred by granting sum-

mary judgment on his civil rights claim. Hurley alleged that Allen and the County violated his First Amendment right to free speech, for which he sued them under 42 U.S.C.A. § 1983. Allen and the County moved for summary judgment on the ground that there was no evidence of a custom, policy, or procedure that would support a cause of action under section 1983.

Section 1983 creates a cause of action for persons deprived of constitutional rights under color of law. 42 U.S.C.A. § 1983 (West 2007).[4] Section 1983 does not provide for vicarious or respondeat superior liability. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir.2002), *cert. denied*, 537 U.S. 1110, 123 S.Ct. 892, 154 L.Ed.2d 782 (2003). When suing a municipality under § 1983, a plaintiff must allege an adequate nexus between the unconstitutional act and the municipality; that is, the plaintiff must allege "(1) a policy maker; (2) an official policy; and (3) a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. Houston*, 237 F.3d 567, 578 (5th Cir.), *cert. denied*, 534 U.S. 820, 122 S.Ct. 53, 151 L.Ed.2d 23 (2001) (citing the seminal case *Monell v. Dept. of Social Serv.'s*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2038, 56 L.Ed.2d 611 (1978)).

The second prong of the adequate-nexus test requires proof of an "official policy," and usually plaintiffs attempt to show the requisite policy by demonstrating a "custom which, even if not formally approved by an appropriate decision maker, may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997). In this case, Hurley's basis for municipal liability is one which is less frequently invoked, but just as clearly established in civil rights case law: a plaintiff can establish a "policy" for *Monell* purposes by pointing to a "decision to adopt [a] particular course of action [if] properly made by [a municipality's] authorized decision makers." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). When a decision maker possesses final policymaking authority regarding the action, "a single action ... constitutes the official policy of the municipality." *Bd. of County Comm'rs of Bryan County*, 520 U.S. at 404, 117 S.Ct. at 1388. Whether a government decision maker has final policymaking authority is a question of law. *Pembaur*, 475 U.S. at 483, 106 S.Ct. at 1299–1300; *Denton*, 136 F.3d at 1044.

Ratification of an officer's decision by a policymaker with final decision-making authority may constitute the official policy of the municipality: "[W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, [the authorized policymakers] have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision *and the basis for it*, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct.

---

4. Section 1983 provides,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

915, 926, 99 L.Ed.2d 107 (1988) (emphasis added). Identifying a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body. *Bd. of County Comm'rs of Bryan County,* 520 U.S. at 404, 117 S.Ct. at 1388 (citing *Monell,* 436 U.S. at 694, 98 S.Ct. at 2027). "That a plaintiff has suffered the deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably." *Id.* at 406–07, 117 S.Ct. at 1389.

Hurley argues that the Tarrant County Civil Service Commission has final policymaking authority with regard to the termination of deputy constables. We agree. Tarrant County deputy constables are subject to and protected by the County's civil service system. *See* TEX. LOC. GOV'T CODE ANN. § 158.001(2) (Vernon 1999); *see also County of Dallas v. Wiland,* 216 S.W.3d 344, 348, n. 14 (Tex.2007) (noting that legislature amended § 158.001(2) in 1989 for the express purpose of allowing counties to include deputy constables within their civil service systems). Under local government code § 158.012, a county civil service commission has final authority within a county over the decision to demote, suspend, or terminate a county employee: "A county employee who, on a final decision by [a county civil service] commission, is demoted, suspended, or removed from the employee's position may appeal the decision only by filing a petition in a district court." TEX. LOC. GOV'T CODE ANN. § 158.012 (Vernon 2005). No other county official or body has authority over the commission's employment decisions. As such, the Tarrant County Civil Service Commission had final policymaking authority over Hurley's termination.

But while the parties agree that the Commission upheld Allen's termination of Hurley, Hurley presented no summary judgment evidence that the Commission approved the alleged unconstitutional *basis* for Allen's decision. *See Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926. Hurley attached three volumes of testimony from his hearing before the Commission. At no time during the hearing did Hurley inform the Commission, either through evidence or argument, about the t-shirt and electioneering incidents or his claim that Allen terminated him for reporting those incidents to Thompson in violation of Hurley's right to free speech. Instead, the evidence presented to the Commission concerned the incidents described in Hurley's termination letter.

In this case, although Hurley presented some evidence that he suffered a deprivation of federal rights at the hands of Allen, he presented no evidence that will permit an inference of municipal culpability. *See Bd. of County Comm'rs of Bryan County,* 520 U.S. at 406–07, 117 S.Ct. at 1389. To hold the County liable for Allen's actions under these circumstances would blur, if not erase, the line between vicarious liability and section 1983 liability drawn by the Supreme Court in *Monell. See Monell,* 436 U.S. at 694–95, 98 S.Ct. at 2037–38. Therefore, we hold the trial court did not err by granting summary judgment on Hurley's section 1983 claim on the ground that there is no evidence of a custom, policy, or procedure that would support such a claim. We overrule his second issue.

## Conclusion

Having overruled both of Hurley's issues, we affirm the trial court's judgment.