

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00194-CV

NINA LOPEZ

APPELLANT AND APPELLEE

V.

TARRANT COUNTY, TEXAS

APPELLEE AND APPELLANT

----------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 236-256361-11

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Nina Lopez appeals the trial court's final judgment granting the motion for summary judgment of Tarrant County, Texas. In three issues, Lopez argues that the trial judge should have been recused in this case; that the trial court erred by granting summary judgment in favor of Tarrant County; and that this court should

---

[1]See Tex. R. App. P. 47.4.

reverse the trial court's judgment and transfer this case "back to Dallas County." Tarrant County conditionally appeals the trial court's judgment regarding its plea to the jurisdiction. Because we overrule all three of Lopez's issues on appeal, we do not address Tarrant County's conditional issue, and we will affirm.

## II. BACKGROUND

Lopez began her employment with Tarrant County as a Receptionist for Tarrant County Administrator G.K. Maenius in 2005. In 2010, Maenius promoted Lopez to be his Executive Secretary. Lopez alleges that on Friday, April 23, 2010, Judi Scott, Agenda Coordinator for the Tarrant County Commissioners Court, assaulted her. Robin Worthy, Assistant Director of Tarrant County Human Resources Department, said that she first learned of the alleged assault when Lopez reported it to her on April 23, 2010. Worthy said that she encouraged Lopez to report her allegation to Maenius. Worthy notified Human Resources Director Tina Glenn of Lopez's allegation that same day.

Glenn emailed Lopez and also encouraged her to report the assault allegation to Maenius. Lopez, however, did not notify Maenius on April 23. Instead, on the next day, Saturday, April 24, 2010, Lopez reported her allegation to the Fort Worth Police Department. Later that day, Lopez called Maenius and reported her allegation. By Maenius's account, Lopez expressed reluctance at moving forward with her allegation. Maenius told Lopez that there was no option but to investigate the alleged assault. As Maenius had directed, Lopez submitted her written report to him on Monday, April 26, 2010.

2

After Maenius reviewed her report, he met with Lopez. Maenius then met with Worthy and gave her a copy of Lopez's report. On Tuesday, April 27, 2010, Maenius met with Glenn and Worthy and directed them to immediately investigate Lopez's allegation. According to Glenn, Maenius was adamant that an investigation be started immediately "to get to the bottom of what had happened."

Two investigations, one by the Tarrant County Sheriff's Office and the other by Glenn and Worthy, concluded that there was insufficient evidence to support Lopez's allegation that she had been assaulted. Maenius was not actively involved in these investigations.

On the morning of Wednesday, June 30, 2010, according to multiple witnesses, Lopez confronted Maenius, accusing him of providing her personal telephone number to reporters from the press and arranging for those reporters to call her the night before. Lopez further accused Maenius of coming to her home uninvited. Lopez claimed that she felt compelled to, and did, send an email to Tarrant County Sheriff Dee Anderson stating that she did not want Maenius coming to her home. In short order, Maenius requested that Assistant County Administrator Mark Mendez and Worthy come to his office. There, Mendez and Worthy witnessed Lopez's conduct.

Through affidavit, Worthy testified that Lopez was "yelling" and that she repeatedly had to tell her to lower her voice. She described Lopez's body language as "agitated" and "animated." Worthy said that Lopez's conduct was

3

not appropriate for the workplace. Worthy also confirmed that Lopez had accused Maenius of having reporters call her house the night before. During the meeting, Worthy asked Lopez about these alleged calls. By Worthy's account, Lopez was unable to provide specifics about the alleged calls. Worthy testified that she also heard Lopez tell Maenius it was "[y]our word against mine."

According to Mendez's affidavit, Lopez was "antagonistic" toward Maenius during the meeting. Mendez stated that Lopez "kept interrupting [Maenius] and would not let him finish his sentences." Like Worthy, Mendez contended that Lopez accused Maenius of arranging for a reporter from the *Fort Worth Star-Telegram* to call her the night before. Mendez stated that Lopez kept "raising her voice" and that she "appeared out of control." Mendez averred that, "In my 26 years of work as a consultant and for Tarrant County, I had never seen an employee confront an employer the way [] Lopez confronted [] Maenius. . . It was my impression that [] Lopez's behavior went far beyond what would be appropriate and acceptable in the workplace."

According to Maenius's affidavit, Lopez came into his office that morning, and she was "clearly agitated." Maenius stated that after she ignored his greeting, Lopez began to shout that she was "not going to stand for this anymore and I want you to stop it." Maenius said he did not know what she was talking about. Maenius averred that, in a "confrontational tone," Lopez said she had received two phone calls the night before from a *Fort Worth Star-Telegram* reporter, who allegedly asked her if she was Lopez and whether she worked for

4

Maenius. Maenius said that Lopez claimed to have talked to the reporter for a "short while and then hung up" and that Lopez further claimed that the reported called her back and asked the same questions and that after another short conversation, she hung up on him a second time.

Maenius averred that Lopez accused him of giving the reporter her phone number and told him to tell the reporter not to call her anymore. By Maenius's account, she then insisted that she did not want to discuss the issue anymore and started to leave his office. Maenius contended that the entire confrontation took him by surprise but that he stopped Lopez from leaving and asked her if she was accusing him of having a reporter call her house. She said "yes." He said that she then stated that she did not want him coming to her home anymore and that she had sent an email to "County Judge Glen Whitley, with a copy to Sheriff Dee Anderson." Lopez claimed that the email asked Judge Whitley and Sheriff Anderson to instruct Maenius to not come to her home. Maenius said that he replied that not only had he never been to her home, he did not even know where she lived. When he asked Lopez why she was making these accusations, she did not respond. Maenius said that at that point, he asked Worthy and Mendez to come to his office.

Maenius stated that once Worthy and Mendez were in his office, he attempted to relay to them what had just happened but that Lopez repeatedly interrupted him. In their presence, Lopez again repeated that Maenius had caused a reporter to call her, but when Worthy inquired whether her caller I.D.

5

would corroborate her story, Lopez said that she did not know whether the person who had called her was in fact a reporter. Maenius said that Lopez also confirmed to Worthy that Maenius had never been to her home. Maenius described Lopez's overall behavior in the meeting as "confrontational, disrespectful and insubordinate." He also averred that Lopez had made "baseless and unfounded allegations which [she] later admitted were untrue." Maenius further stated that shortly after the meeting, Lopez sent him an email apologizing for her behavior. In the email, Maenius said that Lopez described her own behavior as "inexcusable." Maenius said that Lopez copied this email to Glenn, Worthy, Mendez, and Assistant County Administrator Jay Singleton.

Maenius averred that after "considering [] Lopez's behavior and the baseless accusations she had made on June 30, 2010, [he] made the decision to terminate" her employment a couple of weeks later on July 14, 2010. Maenius also cited Lopez's "confrontational, disrespectful and insubordinate conduct" during the meeting as grounds for termination. He stated that his decision to terminate her employment was also "based on the high level of trust that must exist in the working relationship between the County Administrator and the Executive Secretary and the fact that this trust was irreparably damaged by [] Lopez's behavior on June 30, 2010." Maenius went on to state that after the June 30, 2010 meeting, he "no longer had the trust in [] Lopez that is critical to" her position.

6

Singleton was in the office adjacent to Maenius's office on the morning of June 30, 2010. Singleton averred that he heard Lopez shouting from Maenius's office. He also said that the "shouting" by Lopez "went on for several minutes." According to Singleton, the shouting was so loud he could hear it "through [Maenius's] door into the common area and hallway."

As part of its summary-judgment evidence, Tarrant County introduced an email sent by Lopez shortly after the June 30, 2010 meeting. The email read

Ms. Robin,

Sheriff Anderson, inform me he did not have a copy of the email I sent him, I did not ask Judge Whitley.

Nina Lopez
Executive Secretary
to G.K. Maenius
County Administrator

Tarrant County also introduced an email sent from Lopez to Maenius, Singleton, Mendez, Glenn, and Worthy shortly after the June 30, 2010 meeting. This email read:

Mr. Maenius,

I apologize. there's no excuse, I'm tired, I haven't eaten, I'm 2½ sizes down on my weight, stress, I haven't slept, and I probably over reacted. I have been afraid of being hit again.

I stand by my truth I was assaulted on April 23, 2010 in this office.

Nina Lopez
Executive Secretary
to G.K. Maenius
County Administrator

7

According to Glenn's deposition testimony, she met with Lopez on July 1, 2010, to discuss what had transpired in the June 30, 2010 meeting. Glenn said that Lopez asked if she would be written up for her conduct. Glenn told Lopez that "any personnel action [regarding Lopez] would be decided by [] Maenius." In this meeting, Glenn asked Lopez about the phone calls Lopez claimed to have received during the night of June 29, 2010. Glenn said that Lopez said that after she "thought about it," the calls may have been from a charity, and Lopez claimed that she did not answer the second call.

Lopez told Glenn that on June 30, 2010, she told Maenius that she had sent an email to Sheriff Anderson, asking him "to keep [Maenius] away from her home." Lopez explained that she had previously extended an invitation to Maenius to come to her home to look for documents, but that she had changed her mind. As Worthy had done, Glenn also asked Lopez for a copy of the email Lopez claimed to have sent to Sheriff Anderson. Lopez could not produce the email.

Through deposition, Lopez testified that while in Maenius's office on the morning of June 30, 2010, Maenius, Worthy, and Mendez consistently told her that she was yelling and out of control. Lopez further testified that during the meeting the others "convinced [her]" that she "was behaving badly." Lopez, however, stated that she believed she was not yelling and that Maenius's tone toward her caused her to cry. Lopez also admitted that she never sent an email

8

to Sheriff Anderson asking him to instruct Maenius not to come to her house. She averred that she did not send the email out of respect for Maenius.

Lopez filed this suit against Tarrant County in Dallas, claiming that she had been wrongfully terminated due to her allegation that Scott had assaulted her. Tarrant County sought to transfer venue to Tarrant County. The Dallas County trial court denied Tarrant County's motion and Tarrant County appealed. *In re Tarrant Cnty.*, 345 S.W.3d 784, 786 (Tex. App.—Dallas 2011, original proceeding, mand. granted). The Dallas Court of Appeals held that mandatory venue for this cause of action was Tarrant County. *Id.* Tarrant County then filed a combined plea to the jurisdiction and motion for summary judgment. Tarrant County's motion for summary judgment asserted the affirmative defense that Lopez's employment had been terminated independent of her assault allegation. Prior to filing her response to Tarrant County's combined motion, Lopez filed a motion to recuse the assigned Tarrant County trial judge. Presiding Judge Jeff Walker of the Eight Administrative Judicial Region of Texas denied Lopez's motion.

After considering Tarrant County's combined motion, Lopez's response, and the summary-judgment evidence presented by the parties, the trial court denied Tarrant County's plea to the jurisdiction but granted summary judgment in its favor. This appeal followed.

9

## III. Discussion

### A.    Lopez's Recusal Motion

In her first issue, Lopez argues that Presiding Judge Walker erroneously denied her motion to recuse the trial court judge of the 236th District Court of Tarrant County. Lopez argues that because the trial judge's salary is subsidized by Tarrant County; because Tarrant County contributes to the trial judge's benefits—including healthcare and retirement contributions; and because Maenius has "relationships with the State District Judges in Tarrant County from projects such as the design and construction of . . . courthouse[s]," a "reasonable person" would conclude that there is an "appearance of impropriety" for such a judge to preside over a case involving Tarrant County.

We review the denial of a motion to recuse under an abuse of discretion standard. *See* Tex. R. Civ. P. 18a(j)(1)(A). Judges are obligated to decide matters presented to them and must not be recused unnecessarily. *See Rogers v. Bradley*, 909 S.W.2d 872, 879 (Tex. 1995) (Enoch, J., concurring); *see also In re K.E.M.*, 89 S.W.3d 814, 819 (Tex. App.—Corpus Christi 2002, no pet.).

A party seeking recusal must satisfy a "high threshold" before a judge must be recused. *Liteky v. United States*, 510 U.S. 540, 558, 114 S. Ct. 1147, 1158 (1994) (Kennedy, J., concurring). In determining whether recusal is proper, "the [] inquiry is whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge and the case, would have a reasonable doubt that the judge is actually impartial." *Kniatt v. State*, 239 S.W.3d

10

910, 915 (Tex. App.—Waco 2007, order on reh'g) (citing *Burkett v. State*, 196 S.W.3d 892, 896 (Tex. App.—Texarkana 2006, no pet.)); *see Rogers*, 909 S.W.2d at 880 (Enoch, J., concurring). Accordingly, the determination of recusal should be made based on a studied analysis of all of the circumstances involved rather than a knee-jerk reaction to one fact in isolation. *Kniatt*, 239 S.W.3d at 915. This determination employs a "reasonable-person test," and courts evaluate the merits of a motion from "a disinterested observer's point of view." *Id.*; *Rogers*, 909 S.W.2d at 882 (Enoch, J., concurring); *see United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995) (explaining that courts must analyze how facts would appear to "the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person.").

Partiality, bias, and prejudice, in the context of recusal, do "not refer to all favoritism, but only to such as is, for some reason, wrongful or inappropriate." *Liteky*, 510 U.S. at 552, 114 S. Ct. at 1156. Stated differently, the terms refer to "predispositions that go beyond what is normal and acceptable" or to "favorable or unfavorable" dispositions that are "excessive in degree." *Id.* at 552, 114 S. Ct. at 1155. Accordingly, the need for recusal is triggered only when a judge displays an "attitude or state of mind so resistant to fair and dispassionate inquiry" as to cause a reasonable member of the public to question the objective nature of the judge's rulings. *Id.* at 557–58, 114 S. Ct. at 1158 (Kennedy, J., concurring).

11

Courts enjoy a "presumption of judicial impartiality." *Abdygapparova v. State*, 243 S.W.3d 191, 198 (Tex. App.—San Antonio 2007, pet. ref'd). The presumption no doubt results from the well-accepted notions that conscientious judges will nullify the effect of any potential bias by making themselves aware of those possible biases and that they understand "their duty to render decisions upon a proper record and to disregard" extraneous matters. *Liteky*, 510 U.S. at 562, 114 S. Ct. at 1160 (Kennedy, J., concurring).

For all of these reasons, the movant bears the burden of proving that recusal is warranted. *Abdygapparova*, 243 S.W.3d at 198. That burden is only satisfied when the movant provides facts demonstrating the presence of bias or partiality "of such a nature and extent as to deny the movant due process of law." *Office of Pub. Util. Counsel v. Public Util. Comm'n*, 185 S.W.3d 555, 574 (Tex. App.—Austin 2006, pet. denied); *Roman v. State*, 145 S.W.3d 316, 321 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd); *see Abdygapparova*, 243 S.W.3d at 198 (explaining that movant must show high level of antagonism that is so deep-seated that it would be impossible for judge to render fair judgment). Conclusory statements, conjecture, or mere assertions of bias will not satisfy the movant's burden or overcome the presumption of impartiality. *Rogers*, 909 S.W.2d at 881, 884 (Enoch, J., concurring); *Abdygapparova*, 243 S.W.3d at 198.

Here, we find nothing in Lopez's argument that goes beyond conclusory statements, conjecture, or mere assertions of bias or the appearance of impropriety. Indeed, both in her motions to recuse filed in the trial court and filed

12

in this court, Lopez argued not only that the sitting trial judge that heard this case should have been recused, but any judge who was paid a salary in part by Tarrant County should have been recused. Furthermore, in her recusal motion, Lopez specifically stated that she had no knowledge "that the judge in the 236th District Court or any other sitting State District Judge has any actual bias regarding the facts" of her case. Thus, admittedly, Lopez is relying on conjecture and mere assertion. *See Abdygapparova*, 243 S.W.3d at 198 ("The court enjoys a presumption of judicial impartiality which is not defeated by the mere assertion of bias based on a trial judge's previous judicial relationship with a defendant."). To be sure, Lopez did not present at the trial level, nor on appeal now, any evidence that the sitting judge in the 236th District Court displayed a predisposition that goes beyond what is normal and acceptable to any excessive degree regarding her case. *Liteky*, 510 U.S. at 550, 552, 114 S. Ct. 1155. We hold that Presiding Judge Walker did not abuse his discretion by overruling Lopez's motion to recuse the trial judge. *See* Tex. R. Civ. P. 18a(j)(1)(A). We overrule Lopez's first issue.

## B. Lopez's Whistleblower Act Claim

In her second issue, Lopez argues that Tarrant County did not conclusively establish its affirmative defense and that the trial court therefore erred by granting its motion for summary judgment. We disagree.

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the

13

light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively establishes all the elements of the affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008); *see* Tex. R. Civ. P. 166a(b), (c).

Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent, controverting evidence that raises a fact issue. *Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999); *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 665 (Tex. App.—Fort Worth 2010, no pet.). When a trial court does not specify the ground relied on for granting summary judgment, the summary judgment will be affirmed on appeal if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Hanson v. Greystar Dev. & Constr., LP*, 317 S.W.3d 850, 852 (Tex. App.—Fort Worth 2010, pet. denied).

"A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing

14

governmental entity or another public employee to an appropriate law enforcement authority."  Tex. Gov't Code Ann. § 554.002(a) (West 2012); *see Steele v. City of Southlake*, 370 S.W.3d 105, 116 (Tex. App.—Fort Worth 2012, no pet.).  A violation of section 554.002 waives governmental immunity.  *State v. Lueck*, 290 S.W.3d 876, 878 (Tex. 2009); *see* Tex. Gov't Code Ann. § 554.0035 (West 2012).  A person whose employment is terminated in violation of section 554.002 may sue for injunctive relief, reinstatement, damages, and reasonable attorney's fees.  Tex. Gov't Code Ann. § 554.003.  The person must generally sue within ninety days of the improper employment action.  *Id.* § 554.005 (West 2012).

In this case, Tarrant County sought summary judgment on the affirmative defense described by section 554.004(b) of the government code, which states:

> It is an affirmative defense to a suit under this chapter that the employing state or local governmental entity would have taken the action against the employee that forms the basis of the suit based solely on information, observation, or evidence that is not related to the fact that the employee made a report protected under this chapter of a violation of law.

*Id.* § 554.004(b) (West 2012). Tarrant County argued in its motion that Maenius, who had the sole authority to fire Lopez, terminated her employment for "conduct unbecoming" of her position as Maenius's Executive Secretary.  Specifically, Tarrant County argued, and offered competent summary-judgment evidence, that Lopez's conduct on June 30, 2010, included "shouting, being insubordinate, disrespectful, confrontational and making accusations which Lopez later admitted

15

were untrue." Tarrant County provided testimony from Maenius that Lopez was terminated for the reasons set forth in the "Notice of Intent to Terminate." The termination notice cited that "[Lopez's] demeanor and conduct" had "completely undermined the trust and confidence required for [her] to successfully perform [her] duties as Executive Secretary" as the reason for her termination.

In Lopez's response to Tarrant County's motion, she generally asserted that "[t]here is ample evidence linking [Tarrant County's] termination of [Lopez] to her report that she was assaulted." Lopez further asserted that she disputed that "she engaged in the conduct of which she is accused and [Tarrant County's] own HR representative admits she suggested to Maenius that Lopez not be terminated but instead given progressive discipline or be allowed to transfer." But, other than pointing to "circumstantial" evidence that tended to demonstrate a link between her termination and her assault allegation, Lopez did not provide competent controverting evidence against much of the evidence regarding Tarrant County's affirmative defense.

Indeed, Lopez pointed to evidence in the record that she had denied "yelling at Maenius and instead testified that she cried when Maenius began asking her if she had gone to the media." She also pointed to evidence in the record that "HR Director Glenn testified she had reservations about terminating Lopez." Significantly, and as Tarrant County points out, Lopez did not, however, produce summary-judgment evidence controverting that she made false accusations against Maenius that she later admitted were not true; that she

16

untruthfully claimed she had sent an email to Sheriff Anderson that she later admitted she did not send; that she was "out of control" and kept interrupting Maenius during the June 30, 2010 meeting; that she was "animated" and "agitated" at Maenius during the meeting; that she engaged in disrespectful behavior "beyond [what] would be appropriate and acceptable in the workplace"; or that she had falsely accused Maenius of coming to her home.

The affirmative defense in section 554.004(b), if conclusively established, tends to negate the causation element of a plaintiff's claim because to show causation in a Whistleblower Act case, "a public employee must demonstrate that after he reported a violation of the law in good faith to an appropriate law enforcement authority, the employee suffered discriminatory conduct by his employer that *would not* have occurred when it did if the employee had not reported the illegal conduct." *Hurley v. Tarrant Cnty.*, 232 S.W.3d 781, 786 (Tex. App.—Fort Worth 2007, no pet.) (emphasis added); *see City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 68 (Tex. 2000); *Tex. Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995) ("[T]he standard of causation in whistleblower and similar cases should be that the employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did."). This causation standard has been described as a "but for" causal nexus requirement. *Hurley*, 232 S.W.3d at 786 (*citing Rogers v. City of Fort Worth*, 89 S.W.3d 265, 280 (Tex. App.—Fort Worth 2002, no pet.)).

17

Typically, a causal link between the employee's report of illegal conduct and the adverse employment action may be established by circumstantial evidence, including knowledge of the report of illegal conduct, expression of a negative attitude toward the employee's report of the conduct, failure to adhere to established policies regarding employment decisions, discriminatory treatment of the reporting employee in comparison to similarly situated employees, and evidence that the stated reason for the adverse employment action was false. *City of El Paso v. Parsons*, 353 S.W.3d 215, 226 (Tex. App.—El Paso 2011, no pet.) (*citing Zimlich*, 29 S.W.3d at 69); *Hurley*, 232 S.W.3d at 786. On appeal, Lopez heavily relies on such circumstantial evidence in an effort to establish summary judgment was improper; she asserts, among other facts, that

- o Tarrant County did not adhere to its "normal practice" of progressive discipline;

- o Maenius terminated Lopez within three months of her report of assault;

- o Lopez had testified that Maenius was hostile to her report; and

- o Tarrant County did not terminate a similarly situated employee.[2]

It is indeed possible that these facts amount to circumstantial evidence showing that Lopez's allegation of assault provided one basis for Maenius's

_____

[2]In her response to Tarrant County's summary judgment, Lopez argued that a similarly situated employee had not been terminated. Lopez seems to have attempted to add this argument to her issue on appeal, but she did so through a partial footnote that is clearly incomplete. In the interest of justice, we have considered this as one of the factual bases of her issue. *Cf.* Tex. R. App. P. 38.1(f).

decision to terminate her employment. But under the plain language of section 554.004(b), Tarrant County is nonetheless entitled to its affirmative defense if Maenius decided to terminate Lopez solely on a basis that was independent of her report. Tex. Gov't Code Ann. § 554.004(b).

The Whistleblower Act does not require an employee to prove that the reporting of illegal conduct was the *sole* reason for the complained-of adverse employment action. *Hurley*, 232 S.W.3d at 786. If the employee's report would not have been enough by itself to cause the employer's adverse employment action—but was an indispensable component, in combination with other facts, of the action—then the employee's report legally caused the action under the Whistleblower Act. *See id.* If, however, the evidence conclusively establishes that any possible consideration by the employer of the fact that the employee made a report was only superfluous to the adverse employment action and that the action would have occurred regardless of the fact of the report, then section 554.004(b)'s affirmative defense precludes liability. *See* Tex. Gov't Code Ann. § 554.004(b).

Relying on this court's decision in *Rogers*, Lopez argues, like she did in her response to Tarrant County's summary judgment motion, that the trial court erred by concluding that no genuine issue of material fact exists regarding Tarrant County's claim that she was fired for her conduct on June 30, 2012. *Rogers*, 89 S.W.3d at 280. Lopez argues that *Rogers* stands for the proposition that an employer's failure to adhere to its progressive-discipline policy is

19

evidence that her termination "was not justified." Lopez further argues that like the plaintiff in *Rogers* who denied being untruthful, she produced summary judgment evidence that she denies the allegation that she yelled at Maenius during the June 30, 2010 meeting. Setting aside the significant procedural differences between this case and *Rogers*, we believe that Lopez's reliance on *Rogers* is misplaced. *See id.* at 285 (holding, in bench trial, that trial court was free to believe employee's controverted testimony that he did not engage in untruthful conduct which allegedly served as reason for him being fired).

It is true that in *Rogers* this court discussed the defendant's failure to adhere to its progressive-discipline policy. *Id.* at 281. But that discussion was singularly focused on whether Rogers had presented circumstantial evidence tending to link his termination with his whistleblower report. *Id.* The defendant's failure to adhere to these policies was not relevant to our discussion regarding whether the defendant had established its affirmative defense. *Id.* at 284. Also, unlike in *Rogers* where the plaintiff had provided evidence disputing the only reason cited for his termination other than his whistleblower report, Lopez merely cites evidence controverting whether she had yelled at Maenius, while leaving alone and uncontroverted the remaining evidence that Tarrant County offered evidence of regarding its independent reasons for terminating Lopez's employment. In fact, as Tarrant County points out, Lopez admits that she engaged in inappropriate behavior on June 30, 2010, but believes that her discipline should have been less drastic than termination.

20

Furthermore, we agree with Tarrant County that Lopez's case is strikingly similar to this court's decision in *Steele*. 370 S.W.3d at 125. Like *Steele*, where despite the fact that evidence existed that the employer skipped several less-drastic measures in its progressive discipline policy and simply terminated Steele for his undisputed untruthfulness, Tarrant County provided uncontroverted summary-judgment evidence that Maenius terminated Lopez for untruthful, disrespectful, and "conduct unbecoming" of her position as Maenius's Executive Secretary. Tarrant County also provided uncontroverted summary judgment evidence that Maenius had the sole authority to terminate Lopez and that he believed his trust in her had been shattered by her actions on June 30, 2010, which was necessary in order for her to fulfill her duties as his Executive Secretary.

For all of these reasons, based upon the summary-judgment evidence that Tarrant County presented and upon the lack of evidence by Lopez to raise a genuine issue of material fact that she would not have been fired based on her conduct in the June 30, 2010 meeting, we conclude that Tarrant County conclusively proved their entitlement to summary judgment on the affirmative defense of section 554.004(b). *See* Tex. Gov't Code Ann. § 554.004(b); *see also Steele*, 370 S.W.3d at 125–26 (holding defendants entitled to summary judgment based on affirmative defense that the employing governmental entity would have taken the action against the employee based on uncontroverted evidence of

21

employee's untruthfulness despite the fact that the employee made a whistleblower report).   We overrule Lopez's second issue.

## C.     Venue

In her third issue, Lopez argues that the appropriate venue for this case was Dallas County and that because venue was proper in Dallas County, where she originally filed this suit, "the judgment should be reversed and the case transferred back to Dallas County."   Lopez's argument is based on the fact that both Tarrant County and Dallas County are members of the North Central Texas Council of Governments and that the Texas Whistleblower Act has a permissible venue provision predicated on whether a county is in the same geographic area that has an established council of governments. *See* Tex. Gov't Code § 554.007(b) (West 2012).   Thus, according to Lopez, she should have been entitled to keep this suit in Dallas County and it was improper that the Dallas County trial court, after Tarrant County appealed the trial court's original denial to the Dallas Court of Appeals, ultimately granted Tarrant County's motion to transfer venue to Tarrant County. *Tarrant Cnty.*, 345 S.W.3d at 784–85.

Tarrant County argues, among other things, that because the Dallas Court of Appeals held that the mandatory provisions of the Texas Government Code controlled over the permissive venue provisions of the Texas Whistleblower Act, and because the Supreme Court of Texas denied Lopez's petition to review that decision, the law-of-the-case doctrine applies in this appeal. *See Wohlfahrt v. Holloway*, 172 S.W.3d 630, 633–34, 638 (Tex. App.—Houston [14th Dist.] 2005,

pets. denied), *cert. denied*, 549 U.S. 1052 (2006) (reasoning that law of the case doctrine applied even though disputed holding was from a different court of appeals where appellant provided "no argument regarding changed issues or facts"). And, Tarrant County argues, because the decision of the Dallas Court of Appeals was not "clearly erroneous," this court should decline Lopez's invitation to reconsider the Dallas Court of Appeals's holding in this case that mandatory venue was in Tarrant County. We agree with Tarrant County.

The law-of-the-case doctrine is "that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages." *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986); *see also Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 71 (Tex. App.—San Antonio 2011, no pet.). The doctrine operates to narrow the issues in successive stages of litigation and is based upon goals of "uniformity of decision as well as judicial economy and efficiency." *Hudson*, 711 S.W.2d at 630. It is a long-standing principle that application of the law-of-the-case doctrine lies within the discretion of the reviewing court, depending on the particular circumstances surrounding the case. *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 715 (Tex. 2003) (citing *Kempner v. Huddleston*, 90 Tex. 182, 37 S.W. 1066, 1066–67 (1896)).

Here, we see no reason to violate the goals of uniformity of decision as well as judicial economy by declaring that the previously-decided venue issue was erroneous. *Tarrant Cnty.,* 345 S.W.3d at 786 ("[W]e conclude the

23

mandatory venue provision of § 15.015 of the Civil Practice and Remedies Code still controls over the permissive venue provision of the Whistleblower Act, and the trial court abused its discretion in denying relator's motion to transfer venue.). Under the law-of-the-case doctrine, in this case, venue was proper in Tarrant County. *Id.*; *See Wohlfahrt*, 172 S.W.3d at 633–34, 638. We overrule Lopez's third issue.

## IV. CONCLUSION

Having overruled all three of Lopez's issues, we need not address Tarrant County's conditional issue, and we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

DELIVERED: August 25, 2015

24