**John BILLINGS, Don R. Finch and Donald Hoffman, Appellants,**

v.

**CONCORDIA HERITAGE ASSOCIATION, INC. and E.C. Spellman, Appellees.**

**No. 08–96–00256–CV.**

Court of Appeals of Texas, El Paso.

April 25, 1997.

Rehearing Overruled July 16, 1997.

---

F. E. Billings, Billings & Solomon, Houston, for Appelants.

Christopher R. Johnston, Victor F. Poulos, J. Morgan Broaddus, III, El Paso, for Appellees.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

## OPINION

BARAJAS, Chief Justice.

This is an appeal from a permanent injunction prohibiting descendants of notorious old west gunslinger, John Wesley Hardin, from disinterring his remains from El Paso's historic "boothill." We reverse and remand.

## I. SUMMARY OF THE EVIDENCE

### A. Out in the West Texas Town of El Paso

The record in the instant case, as supported by various historical accounts, reflects that John Wesley Hardin, coincidently a practicing attorney, relocated to the far west Texas town of El Paso upon release from prison.[1] John Wesley Hardin died with his boots on in August 1895 when he was unexpectedly shot in the back of his head by John Selman, an El Paso County Constable. At the time of his death, Hardin was patronizing the Acme Saloon. He was buried the following day in "boothill," located in El Paso, Texas, in a coffin adorned with a brass plaque that reads: "At Rest." Today, "boothill," i.e., Concordia Cemetery, is said to contain some 65,000 graves, many of which are purportedly stacked one upon the other. Numerous graves at Concordia Cemetery remain unmarked and as a consequence, contain anonymous occupants.

In July 1995, several great-grandchildren of John Wesley Hardin sought to disinter his remains, as well as those of his wife, Jane Bowen Hardin, who is buried close to Smiley, Texas, in order to rebury them together in a perpetual care cemetery at Nixon, Texas.[2]

---

1. John Wesley Hardin, historically described as having once been the most dangerous man in Texas, is said to have killed 42 men. To the contrary, Hardin himself maintained that he was a good citizen, stating that "he had never killed anyone who didn't deserve to be killed."

2. The record shows that on July 25, 1995, the following letter was circulated among the descendants of John Wesley Hardin:

   Dear Cousin:
   For many years our family has openly discussed moving the body of our ancestor John Wesley Hardin back to the Gonzalez County area. It is our feeling that if this is going to

The great grandchildren enlisted the aid of Appellant Don R. Finch, a licensed funeral director who is said to have conducted numerous disinterments during the 35 years of his professional life. The help of Appellant Donald Hoffman, president of the Rancho Nixon Historical Society, was also enlisted.

The record further shows that Finch, when called into service, attempted to contact Concordia Cemetery, but was unable to find their telephone listing. He then contacted one of the larger funeral homes in El Paso and was given the name of Luis Zamorano, as the purported cemetery caretaker. Donald Hoffman made a trip to El Paso for the purpose of securing Zamorano's signature on an application for a disinterment permit to be issued by the Texas Department of Heath. The application permit was also signed by Appellant John Billings, as next of kin and lot owner. In August 1995, the Texas Department of Health issued Finch a Disinterment Permit for the body of John Wesley Hardin.[3] Concordia Heritage has questioned the validity of the permit issued by the Texas Department of Health. We render no opinion, nor should one be implied, as to the validity or invalidity of that permit.

In the early morning hours of Sunday, August 27, 1995, Finch, Hoffman, and various individuals later named as defendants below, traveled to El Paso for the purpose of disinterring the remains of John Wesley Hardin. Upon arrival at Concordia Cemetery, they were served with a handwritten "court order" prohibiting them from removing the body of Hardin.[4] The descendants ceased their activities and returned home.

The Concordia Heritage Association, Inc. is a Texas nonprofit association whose charter purpose is to promote and support the renovation, restoration, and preservation of Concordia Cemetery and to engage in activities, not prohibited by law, that will support, encourage and foster the cultural, social, entertainment, tourism, and historical benefits

---

ever be done, now is the time. His grave site in El Paso, Texas is not in keeping with the high regard a family should place on the final resting place of their great-grandfather.

We first thought of having the body reinterred at the Asher Cemetery near Nixon, Texas, but there is a problem there with the landowner and the fact that no maintenance can be done at the grave site. We feel that the same will someday be true at the Billings Cemetery at Nopal, Texas, since all rural cemeteries are abandoned sooner or later. Since our family lived in the Nixon area for quite some time and considered it our home area as did our great-grandparents, John Wesley and Jane Bowen Hardin, reinterment in Nixon seems appropriate. The Nixon cemetery is on the edge of town on a hillside with the 'Mound Country', where John and Jane Hardin made their home, clearly visible in the distance. A fitting place that will always be kept and maintained.

There will be no cost to any of you for the moving of the body, the cemetery plot, or the headstone. We have taken care of these costs. Please help us in our petition to the Texas Department of Health so our great-grandfather may rest in peace in his old 'home country'. We ask you to sign below our signatures to show your support of our petition to have the body of John Wesley Hardin disinterred at El Paso, Texas, and moved to the cemetery at Nixon, Texas, to be reinterred.

. . . . . .

3. ʻThe right to remove remains from a cemetery is left to the Texas Department of Health. Section 694.001 of the Health and Safety Code states that the Department of Health shall regulate the disposal, transportation, interment and disinterment of dead bodies. Section 711.004 of the same code states that to disinter remains one must obtain: (1) written consent of the cemetery organization; (2) written consent of the plot owner; and (3) written consent of the next line of kinship. Section 711.001 of the code contains various definitions, including that of "plot owner." TEX. HEALTH & SAFETY CODE ANN. § 711.004(26)(Vernon Supp.1997).

4. We note that the handwritten court order, signed on Friday, August 27, 1995, was issued by the Honorable Sam Paxson of the 210th District Court **prior** to the commencement of **any** proceedings in a court of competent jurisdiction. The record does not show at whose direction this court order was sought or who effected service of the order. In Texas an action is commenced in the district or county court by filing a petition in the office of the clerk. TEX.R.CIV.P. 22. *See V.D. Anderson Co. v. Young*, 128 Tex. 631, 101 S.W.2d 798 (1937); *Russell v. Taylor*, 121 Tex. 450, 49 S.W.2d 733 (1932); *Cleveland v. Ward*, 116 Tex. 1, 285 S.W. 1063 (1926). Judicial action without jurisdiction is void. *Cleveland*, 285 S.W. at 1071. When Plaintiff's Original Petition for Injunction and for Declaratory Judgment was filed at 8:47 a.m. on August 28, 1997, the jurisdiction of the 205th District Court of El Paso County Texas for the first time attached. Only then, did the court acquire the power to determine all essential questions, and to do any and all things with reference thereto authorized by the constitution and statutes. *See Cleveland*, 285 S.W. at 1069.

that will accrue to the benefit of the community by the restoration and preservation of the historic cemetery. The record shows that no association controls that portion of Concordia Cemetery where John Wesley Hardin is said to be buried.[5] While Concordia Heritage places itself in the role of caretaker, that issue was not litigated in the trial court and we render no opinion on the validity of that claim.

### B. Procedural History

As noted above, on August 27, 1995, Appellants were served with a handwritten "court order" not to remove the body of John Wesley Hardin. This "court order" served as the functional equivalent of a temporary restraining order. At the time of its delivery, the "order" read in pertinent part as follows:

**In Re the Body
of John Wesley Hardin**

### ORDER

**The body of John Wesley Hardin is not to be removed from Concordia Cemetery El Paso County, Texas without the approval of a court of jurisdiction in El Paso County, Texas**

**Signed August 26, 1995**

Concordia Heritage Association, Inc. originated this action for Injunction and for Declaratory Judgment against Appellants on August 28, 1995, two days after the handwritten "court order" was originated. The petition alleges that the defendants below are individuals residing in the State of Texas, but is silent as to venue facts. In addition to asserting in its petition that it has no adequate remedy at law, Concordia Heritage alleges that the defendants are attempting to exhume the body of John Wesley Hardin without the consent of Concordia Heritage, that Concordia Heritage and the citizens of

El Paso County would suffer irreparable harm, prayed for issuance of a temporary restraining order, a temporary injunction, a permanent injunction, and a declaration that "defendants have no right to remove the body of John Wesley Hardin from Concordia Cemetery." On August 28, 1995, a temporary restraining order was issued, finding among other things, that Concordia Heritage would suffer irreparable harm and has no adequate remedy at law.[6]

On September 12, 1995, Appellants Billings and Finch filed a motion to transfer venue and to dissolve the restraining order. A temporary injunction was issued on September 18, 1995. E.C. Spellman filed an answer and a motion to realign parties, asking that he be made a party plaintiff on October 16 and 17, 1995. Appellant Hoffman was served and entered an appearance. He joined with the other defendants in their motion to transfer venue and to dissolve the temporary injunction. On January 10, 1996, the motion to transfer venue was denied. A hearing was held and judgment was entered on January 29, 1996, granting Concordia's request for issuance of a permanent injunction. Appellants now bring this appeal.

### II. DISCUSSION

■ In Point of Error No. One, Appellants contend that the trial court erred in denying their motion to transfer venue since Concordia's lawsuit was for an injunction and mandatory venue for an injunction lies in the county of the defendants' residence or any one of them. See TEX.CIV.PRAC. & REM.CODE ANN. § 65.023 (Vernon 1986). The record shows that none of the defendants were residents of El Paso County, Texas.

The legal concept that no person who is an inhabitant of this State shall be sued out of the county where that person is domiciled,

---

5. The record does show that other portions of the cemetery are subject to the oversight of the local Catholic Church, the Chinese Benevolent Society, and other like organizations.

6. We note that the Temporary Restraining Order found that moving the body prior to a full hearing would harm and otherwise destroy the remains of John Wesley Hardin, although such

assertions were not even remotely mentioned in Plaintiff's Original Petition for Injunction and for Declaratory Judgment. Additionally, the Temporary Restraining Order itself, while providing the appropriate space for the insertion of a date for a hearing, wholly failed to include a date certain for hearing on the temporary or permanent injunction, as required by law. TEX.R.CIV.P. 680.

with limited statutory exceptions, is a concept that relates back to 1846 and the First Legislature of the State of Texas.[7] Act of March 13, 1846, at 363. That right to·be sued in an individual's place of residence is frequently weighed against the fact that a controversy appropriately may be heard elsewhere. It is for that reason that the Texas Legislature has established numerous exceptions to this fundamental rule. Nonetheless, the legislature has clearly provided in Section 15.061 of the Texas Civil Practices and Remedies Code that mandatory venue provisions control over those permissive in nature. TEX.CIV.PRAC. & REM.CODE ANN. § 15.061 (Vernon 1986).

■ In suits for injunctive relief, when the relief sought does not fall into one of the two exceptions, i.e., a writ of injunction sought to stay proceedings in a suit or execution on a judgment, venue is **mandatory** in the county in which the party to be enjoined or one of them is domiciled. TEX.CIV.PRAC. & REM. CODE ANN. § 65.023 (Vernon 1986). [Emphasis added]. Section 65.023, entitled *Place for Trial,* states as follows:

(a) Except as provided by Subsection (b), a writ of injunction against a party who is a resident of this state shall be tried in a district or county court in the county in which the party is domiciled. If the writ is granted against more than one party, it may be tried in the proper court of the county in which either party is domiciled.

(b) A writ of injunction granted to stay proceedings in a suit or execution on a judgment must be tried in the court in which the suit is pending or the judgment was rendered.

TEX.CIV.PRAC. & REM.CODE ANN. § 65.023 (Vernon 1986). *KJ Eastwood Inv., Inc. v. Enlow,* 923 S.W.2d 255, 256 (Tex.App.—Fort Worth 1996, orig. proceeding). The question of proper venue is raised by a party by simply objecting to a plaintiff's venue choice through a motion to transfer venue. *Wichita County, Tex. v. Hart,* 917 S.W.2d 779, 781

(Tex.1996); *see* TEX.R.CIV.P. 86; *Wilson v. Texas Parks & Wildlife Dep't,* 886 S.W.2d 259, 260 (Tex.1994). As noted above, a motion to transfer was filed by Appellants Billings, Finch, and Hoffman in the instant case. It has been clearly established that if a meritorious motion to transfer based on a mandatory venue provision is on file, the trial court must grant the motion. *Hart,* 917 S.W.2d at 781; *see Langdeau v. Burke Inv. Co.,* 163 Tex. 526, 358 S.W.2d 553, 556 (1962). A trial court's erroneous denial of a motion to transfer venue would require this appellate court to reverse the judgment and remand the case for a new trial. *Hart,* 917 S.W.2d at 781; *see* TEX.CIV.PRAC. & REM.CODE ANN. § 15.064(b)(Vernon 1997); *Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 757 (Tex.1993). As noted above, Section 15.061 of the Texas Civil Practices and Remedies Code provides that mandatory venue provisions control over permissive venue provisions. TEX.CIV.PRAC. & REM.CODE ANN. § 15.061 (Vernon 1986); *Watson v. City of Odessa,* 893 S.W.2d 197, 199 (Tex.App.—El Paso 1995, writ denied); *see also Mims v. East Texas Prod. Credit Ass'n,* 496 S.W.2d 682, 685 (Tex.Civ.App.—Tyler 1973, writ dism'd). However, where the injunction applied for is merely ancillary to the main purpose of the underlying cause of action, it is not properly a "suit" within the meaning of Section 65.023 of the Texas Civil Practice and Remedies Code and the mandatory venue provision is inapplicable. *See Brown v. Gulf Television Co.,* 157 Tex. 607, 306 S.W.2d 706 (1957)(interpreting predecessor statute); TEX.CIV.PRAC. & REM.CODE ANN. § 65.023 (Vernon 1986).

As noted earlier, in their Original Petition for Injunction and for Declaratory Judgment, Concordia Heritage alleged that the defendants below are individuals residing in the State of Texas, but is wholly silent as to venue facts. In addition to asserting in its petition that it has no adequate remedy at law, Concordia Heritage alleges that the defendants are attempting to exhume the body of John Wesley Hardin without the consent of Concordia Heritage, that Concordia Heri-

---

7. It is ironic that John Wesley Hardin, himself a practicing attorney, if confronted with similar facts, would have·been duty bound to advise any client seeking his legal advice that the mandatory venue provision required the filing of a similar action in the county of residence of the defendants.

tage and the citizens of El Paso County would suffer irreparable harm, prayed for issuance of a temporary restraining order, a temporary injunction, a permanent injunction, and a declaration that "defendants have no right to remove the body of John Wesley Hardin from Concordia Cemetery."

■ The Uniform Declaratory Judgment Act is merely a procedural device for deciding cases that are already within the jurisdiction of a trial court. *State v. Morales*, 869 S.W.2d 941, 947 (Tex.1994); *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex.1993). The act does not confer jurisdiction on the trial court, nor does it change the basic character of the underlying suit. *Id.* Moreover, declaratory judgment is appropriate when a real controversy exists between parties, and the entire controversy may be determined by judicial declaration. *Scurlock Permian Corp. v. Brazos County*, 869 S.W.2d 478, 486 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

We have reviewed the pleadings in the instant case, and find that the underlying suit, irrespective of the caption in the original petition, is nothing more than a petition for extraordinary relief in the nature of a request for an injunction. While a declaratory judgment is sought, the petition does not assert a justiciable controversy involving genuine tangible interests, conflicting rights or issues, or matters that are beyond theoretical dispute. *See Scurlock Permian Corp. v. Brazos County*, 869 S.W.2d at 487. The true nature of a lawsuit depends on the facts alleged in the petition, the rights asserted and the relief sought, and not on the terms used to describe the cause of action. *See Brown.*, 306 S.W.2d at 708; *Kale v. Palmer*, 791 S.W.2d 628, 631 (Tex.App.—Beaumont 1990, writ denied). Accordingly, we find that the underlying suit is for injunctive relief and not merely ancillary to the any other cause of action, there being none. The underlying

suit for injunction is a "suit" within the meaning of Section 65.023 of the Texas Civil Practice and Remedies Code and the mandatory venue provision must prevail.[8]

This Court is guided in its decision by the Supreme Court's decision in *Ruiz v. Conoco*, 868 S.W.2d 752 (Tex.1993). The Supreme Court stated that if there is any probative evidence in the entire record, including trial on the merits, that venue was proper in the county where judgment was rendered, and the appellate court must uphold the trial court's determination. *Id.* at 758. But if there is no such evidence, the judgment must be reversed and the case remanded to the trial court, and if there is any probative evidence that venue was proper in the county to which transfer was sought, the appellate court should instruct the trial court to transfer the case to that county. *Id.* Our review of the record reveals that venue was not proper in El Paso, County.

We have thoroughly examined the record in the instant case and we find that although plaintiff's original petition requested injunctive and declaratory relief, no evidence was presented at trial concerning the declaratory action, nor did the judgment afford any relief for the declaratory action. Appellees' opening and closing argument, and all evidence contained in the record, shows this Court that only injunctive relief was requested, and only injunctive relief was ordered by the trial court when it entered a permanent injunction estopping Appellants, their agents, servants, and employees from exhuming and removing the body of Hardin from Concordia Cemetery. At trial, Appellees asked for "a permanent injunction forbidding the defense from removing the body ..." and asked that the temporary injunction awarded by the trial court be made a permanent injunction. At the close of trial, Appellees again requested, "that the court order that the defendants be permanently enjoined from removing the

---

8. In addition, we note that actions brought under the Declaratory Judgments Act are governed by the general venue rules for civil actions. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 471(Tex.1995); *see Stiba v. Bowers*, 756 S.W.2d 835, 837 (Tex.App.—Corpus Christi 1988, no writ); *Citizens Nat'l Bank v. Cattleman's Prod. Credit Ass'n*, 617 S.W.2d 731, 734 (Tex.Civ. App.—Waco 1981, no writ); *Midcon Pipeline Equip. Co. v. Smith*, 623 S.W.2d 166, 167 (Tex. App.–Fort Worth 1981, no writ); *Amoco Prod. Co. v. Texas Elec. Serv. Co.*, 614 S.W.2d 194, 196 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ); *H. Molsen & Co. v. Harp & Lovelace*, 516 S.W.2d 433, 434 (Tex.Civ.App.—Amarillo 1974, no writ).

body of John Wesley Hardin." Appellees also stated, "we are requesting the Court to grant the permanent injunction to restrain the defendants from removing the body of John Wesley Hardin." This was the only relief requested at trial, and the only relief granted by the trial court. There was no other evidence presented for the declaratory action. To the contrary, the "declaratory relief" sought was the declaration of the injunction.

As the Texas Supreme Court stated over fifty years ago,

> An injunction is a remedial writ which courts issue for the purpose of enforcing their equity jurisdiction. In such cases jurisdiction must exist before the writ can issue. In England chancery courts exercise nonjudicial, as well as judicial, powers; but our equity courts possess only judicial powers.... Under our constitution our government is divided into three co-ordinate branches,—that is, into three distinct departments; the legislative, the executive, and the judicial.... From the above it is fundamental that the judicial and executive departments of government are without legislative powers, unless such powers be constitutionally conferred. It is also fundamental that neither the judicial nor the executive branch of the government can create remedies or causes of action.... Under our system there is no such thing as the inherent power of a court, 'if, by that, be meant a power which a court may exercise without a law authorizing it.'

*State v. Morales,* 869 S.W.2d 941, 947 (Tex. 1994), *citing Ex Parte Hughes,* 133 Tex. 505, 129 S.W.2d 270, 273 (1939)(quoting *Messner v. Giddings,* 65 Tex. 301, 309 (1886)) (citations omitted).

Having sustained Appellants' Point of Error No. One, we need not address Appellants' remaining points. Accordingly, we reverse the judgment of the trial court and remand the case to the trial court for proceedings consistent with this opinion.