

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00256-CV

_____

LUMINEX CORPORATION, Appellant

V.

JOSEPH BENJAMIN HILLER A/K/A JOE HILLER, AS TRUSTEE OF THE
DAVID ALAN MEEKER FAMILY IRREVOCABLE TRUST, AND DAVID ALAN
MEEKER, Appellees

---

On Appeal from the 153rd District Court
Tarrant County, Texas
Trial Court No. 153-331622-22

---

Before Sudderth, C.J.; Kerr and Bassel, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

Appellant Luminex Corporation appeals the trial court's orders granting the traditional and no-evidence summary-judgment motions filed by Appellees David Alan Meeker and Joseph Benjamin Hiller as Trustee of the David Alan Meeker Family Irrevocable Trust (DAMFIT) and dismissing with prejudice Luminex's claim under the Texas Uniform Fraudulent Transfer Act (TUFTA). In five issues, Luminex contends that the trial court erred by granting Appellees' summary-judgment motions because (1) a genuine issue of material fact exists regarding whether Luminex has standing as a creditor under TUFTA; (2) Luminex presented more than a scintilla of evidence as to each element of its fraudulent transfer claim; (3) Luminex established that it had not had adequate time for discovery; (4) a genuine issue of material fact exists as to whether Meeker transferred his legal rights, interests, and benefits to DAMFIT; and (5) a genuine issue of material fact exists as to whether Luminex's claim arose within a reasonable amount of time after Meeker made the purported transfer. We affirm.

## I. BACKGROUND

### A. Luminex's Claim Against Meeker

In August 2015 and November 2016, CQuentia Series Holdings, LLC, which was solely owned and operated by Meeker, entered into certain licensing and rental contracts with Luminex. Between August and November 2017, Luminex sent CQuentia three notice letters regarding CQuentia's potential or actual defaults under

2

the contracts. Because CQuentia failed to cure all of the noticed defaults, in February 2018, Luminex sent CQuentia written notice that it had terminated the contracts.

In October 2018, CQuentia and Luminex entered into a settlement agreement to resolve their dispute regarding the contracts.[1] Under its terms, CQuentia agreed to pay Luminex $1,300,000 plus costs and attorney's fees by March 31, 2019. On or about March 28, 2019, in exchange for Luminex's agreement to extend CQuentia's payment deadline, Meeker executed a personal guaranty of CQuentia's obligations under the settlement agreement.

When CQuentia defaulted on its payment obligations under the settlement agreement, Luminex demanded payment from Meeker under the guaranty. After Meeker defaulted on the guaranty, Luminex sued him. In August 2020, Luminex was awarded a final judgment against Meeker in the amount of $1,402,095.82.

## B. Meeker's Family Litigation

After their father's death in 2014, Meeker and his three brothers, Wade, James, and Dan, received mineral interests in certain properties in Reeves and Culberson Counties. The brothers executed a Preferential Right of Acquisition agreement (PRA) giving each of them a right of first refusal in the others' mineral interests.[2] Wade and

---

[1]Meeker was not a party to the settlement agreement.

[2]Under the PRA's terms, if one of the parties wished to transfer his mineral interests (and the proposed transfer was not a "Permitted Transfer"), he must first send his brothers notice specifying the interests to be conveyed, the name and address of the proposed transferee, the consideration offered, the terms of the sale, and the

3

James subsequently transferred their mineral interests to JWM Minerals, LLC (JWM) and the Callaghan 320 Trust (Callaghan) without first providing notice to Meeker and Dan as required by the PRA. In response, Meeker and Dan sued Wade and James for breach of contract.[3]

In October 2017, Meeker and fourteen other individuals and entities, including Meeker's mother and brothers, participated in mediation to resolve various family disputes, including Meeker and Dan's pending lawsuit against Wade and James for breaching the PRA. On October 31, 2017, the parties agreed to terms on a mediated settlement, and on March 2, 2018, they signed a formal, confidential settlement agreement (the Settlement Agreement). As a result of the Settlement Agreement, JWM and Callaghan transferred to DAMFIT a portion of the mineral interests that they had previously received from Wade and James.

## C. Luminex's Fraudulent-Transfer Lawsuit

In January 2022, Luminex filed a fraudulent-transfer lawsuit against Meeker and DAMFIT. In its original petition, Luminex alleged that JWM's and Callaghan's transfers of mineral interests to DAMFIT—which was not a party to the Settlement

___

closing date. The brothers would then have thirty days to determine whether they wished to purchase the mineral interests under the same terms offered to the proposed transferee. If the proposed transfer was a gift, the brothers would have the right purchase the mineral interests for their fair market value.

[3]Besides the individual brothers, various trusts and entities created or controlled by them were parties to the lawsuit. The Dan H. Meeker Children's Irrevocable Trust and Crestview Resources, LLC were co-plaintiffs. JWM and Callaghan were co-defendants.

Agreement or to Meeker and Dan's lawsuit against Wade and James for breach of the PRA—constituted "a fraud against the rights of [Meeker's] creditors . . . because the transfer[s] w[ere] made with the intent to hinder, delay, or defraud" Luminex and Meeker's other creditors.

In May 2022, Luminex served Meeker and DAMFIT with requests for production seeking, among other things, the Settlement Agreement; any documents executed pursuant to its terms; and any "[w]ritten communications, including correspondence, emails, or texts" between Meeker's counsel and any of the other settling parties' attorneys relating to the Settlement Agreement. Meeker and DAMFIT objected to Luminex's discovery requests on numerous grounds, including that the Settlement Agreement and related documents were subject to confidentiality obligations. Between October 2022 and March 2023, the parties engaged in a lengthy discovery dispute that involved two hearings on motions to compel filed by Luminex.[4]

In late February and early March 2023, Meeker and DAMFIT filed traditional

---

[4]The trial court never compelled Meeker or DAMFIT to produce any documents. The trial court instructed Meeker and DAMFIT to submit for in camera inspection any documents that they were withholding based on a claim of confidentiality or privilege, but the trial court granted Meeker's and DAMFIT's summary-judgment motions before their attorneys could finish reviewing the large number of potentially responsive documents that they had received from the attorneys who had represented Meeker in connection with the Settlement Agreement. Thus, the trial court never decided whether the Settlement Agreement and related documents were discoverable, and they were never produced or offered as summary-judgment evidence. Accordingly, they are not part of the appellate record.

and no-evidence summary-judgment motions. In these motions, they argued, among other things, that Luminex lacked standing to assert its fraudulent-transfer claim because (1) Luminex was never a creditor of the transferors of the mineral interests— JWM and Callaghan—and (2) the transferred mineral interests were never Meeker's "asset[s]" according to TUFTA's definition. *See* Tex. Bus. & Com. Code Ann. § 24.002(2).

After Meeker and DAMFIT filed their summary-judgment motions, Luminex amended its petition to modify its allegations regarding the nature of the purportedly fraudulent transfer. Whereas Luminex had originally alleged that the mineral-interest transfers from JWM and Callaghan to DAMFIT had themselves been fraudulent, in its first amended petition it refined its allegations to assert that Meeker had received "certain benefits" from the Settlement Agreement, "which he in turn transferred to DAMFIT by negotiating the transfer of . . . the mineral interests owned by Callaghan . . . and JWM." Notwithstanding this more nuanced characterization of the alleged fraudulent transfer, Luminex still sought a judgment for the value of the mineral interests transferred by JWM and Callaghan.

After considering the parties' extensive briefing and the summary-judgment evidence, the trial court signed orders granting Meeker's and DAMFIT's summary-judgment motions in April and May 2023. Luminex filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

6

## II. DISCUSSION

## A. Luminex Failed to Produce Evidence Raising a Genuine Issue of Material Fact on Each Challenged Element of its Fraudulent-Transfer Claim

Because Luminex's first,[5] second, and fourth issues all pertain to the sufficiency of the evidence supporting the various elements of its fraudulent-transfer claim and are thus interrelated, we address them together. *See Vann v. Gaines*, No. 02-06-00148-CV, 2007 WL 865870, at *1 (Tex. App.—Fort Worth Mar. 22, 2007, no pet.) (mem. op.) (addressing interrelated issues together).

### 1. Standard of Review

We review the grant of summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). The standards of review for traditional and no-evidence summary judgment are well known. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). With respect to a traditional motion for summary judgment, the movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49. We review a no-evidence summary judgment under the same legal-sufficiency standard used to review a directed verdict. Tex. R. Civ. P. 166a(i); *Gish*, 286 S.W.3d at 310. To defeat a no-evidence summary-judgment motion, the

---

[5]Although the parties frame Luminex's first issue as one of standing, whether Luminex was a "creditor" as defined by TUFTA is also an element of its TUFTA cause of action. *See infra* Section II.A.3.

nonmovant is required to produce evidence that raises a genuine issue of material fact on each challenged element of its claim. *See Gish*, 286 S.W.3d at 310; *see also* Tex. R. Civ. P. 166a(i) & 1997 cmt.; *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259 (Tex. 2020).

When reviewing either a traditional or a no-evidence summary judgment, we consider the evidence in the light most favorable to the nonmovant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Gish*, 286 S.W.3d at 310. If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith*, 288 S.W.3d at 424; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

## 2. TUFTA

TUFTA, which was designed to prevent debtors from defrauding creditors by placing assets beyond their reach, provides a comprehensive statutory scheme through which a creditor may seek recourse for a fraudulent transfer of assets. *See* Tex. Bus. & Com. Code Ann. § 24.008(a); *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016); *Wohlstein v. Aliezer*, 321 S.W.3d 765, 776 (Tex. App.—Houston [14th Dist.] 2010, no pet.). "The Act delineates the types of transfers and obligations that are

fraudulent; enumerates the remedies available to a creditor; prescribes the measure of liability of a transferee; and lists defenses and protections afforded a transferee." *Nat'l Cleaners, LLC v. Aron*, No. 14-21-00549-CV, 2022 WL 3973591, at *4 (Tex. App.—Houston [14th Dist.] Sept. 1, 2022, no pet.) (mem. op.) (citing Tex. Bus. & Com. Code Ann. §§ 24.005–.006, 24.008–.009).

Among the transfers deemed fraudulent under TUFTA are those made "with actual intent to hinder, delay, or defraud any creditor of the debtor." *See* Tex. Bus. & Com. Code Ann. § 24.005(a)(1). TUFTA provides a list of eleven nonexclusive factors (commonly referred to as "badges of fraud") that may be considered when determining fraudulent intent, including transfer to an insider, concealment of the transfer, the debtor's involvement in litigation prior to the transfer, transfer of "substantially all" of the debtor's assets, and the debtor's insolvency shortly after the transfer. *Id.* § 24.005(b). Although "[e]vidence of a single 'badge of fraud' does not conclusively demonstrate intent, . . . a confluence of several presents a strong case of fraud." *Janvey*, 487 S.W.3d at 566–67.

TUFTA provides a defrauded creditor with various remedies, including "avoidance of the transfer . . . to the extent necessary to satisfy the creditor's claim." Tex. Bus. & Com. Code Ann. § 24.008(a)(1). If a transfer is voidable, the creditor may recover a money judgment against the first transferee, the person for whose benefit the transfer was made, or any subsequent transferee (other than a good faith transferee who takes for value) for the value of the asset transferred or the amount

9

necessary to satisfy the creditor's claim, whichever is less. *Id.* § 24.009(b).

### 3. Analysis

To obtain relief under TUFTA, a plaintiff must prove: (1) that it is a creditor with a claim against (2) a debtor; (3) that the debtor transferred assets after, or a reasonable time before, the plaintiff's claim arose; and (4) that the transfer was made with the intent to hinder, delay, or defraud the plaintiff creditor.[6] *Nat'l Cleaners, LLC*, 2022 WL 3973591, at \*4 (citing *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 204–05 (Tex. App.—Houston [1st Dist.] 2014, pet. denied)); *see* Tex. Bus. & Com. Code Ann. § 24.005(a)(1). Because Meeker's and DAMFIT's no-evidence summary-judgment motions challenged all four of these elements, it was incumbent upon Luminex to produce evidence raising a genuine issue of material fact as to each of them. *See Gish*, 286 S.W.3d at 310. But, as shown below, it failed to do so.

TUFTA defines a "transfer" as "every mode . . . of disposing of or parting

---

[6]With regard to the fourth element, as an alternative to proving actual fraudulent intent, a future-creditor plaintiff (such as Luminex) may prove that the debtor made the transfer "without receiving a reasonably equivalent value in exchange" and either "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" or "intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." Tex. Bus. & Com. Code Ann. § 24.005(a)(2). But while Luminex stated in its amended petition that it "ha[d] reason to believe" that it could "be expected to show" this alternative basis for relief "upon additional discovery," it did not actually allege that it was entitled to relief under Section 24.005(a)(2).

with" an "asset," which, in turn, is defined as "property of a debtor."[7] Tex. Bus. & Com. Code Ann. § 24.002(2), (12). Further, for the purposes of TUFTA, a "debtor" is "a person who is liable on a claim," and a "creditor" is "a person . . . who has a claim." *Id.* § 24.002(4), (6). "'Claim' means a right to payment or property . . . ." *Id.* § 24.002(3).

In its original petition, Luminex sought to avoid JWM's and Callaghan's transfers of mineral rights to DAMFIT pursuant to the Settlement Agreement. But as Meeker and DAMFIT pointed out in their summary-judgment motions, the undisputed facts show that Meeker never owned these mineral interests. Further, Luminex has no claim against either JWM or Callaghan, meaning that under TUFTA they are not debtors and, by extension, the mineral interests are not assets. *See id.* § 24.002(2), (3), (6). Engaging in a bit of legal legerdemain, Luminex attempted to overcome this obvious problem by amending its petition such that it sought to avoid Meeker's purported transfer to DAMFIT of the "benefits" that he had received under the Settlement Agreement rather than JWM's and Callaghan's transfers of the mineral interests themselves. But, tellingly, even in its amended petition, Luminex requested a judgment for "the value of the mineral interests fraudulently transferred" by JWM and Callaghan, not the value of the "benefits" that Meeker had supposedly transferred to

---

[7]For TUFTA purposes, a debtor's property is not an asset "to the extent it is encumbered by a valid lien; . . . generally exempt under nonbankruptcy law; or" constitutes "an interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant, under the law of another jurisdiction." Tex. Bus. & Com. Code Ann. § 24.002(2).

11

DAMFIT. Thus, in substance, even in its amended petition, Luminex still sought to avoid the transfer of the mineral interests; it was merely attempting to achieve indirectly under TUFTA what it could not do directly. *See Karagounis v. Bexar Cnty. Hosp. Dist.*, 70 S.W.3d 145, 147 (Tex. App.—San Antonio 2001, pet. denied) ("The true nature of a lawsuit depends on the facts alleged in the petition, the rights asserted and the relief sought . . . ." (quoting *Billings v. Concordia Heritage Ass'n, Inc.*, 960 S.W.2d 688, 693 (Tex. App.—El Paso 1997, pet. denied))); *cf. Davis v. Hendrick Autoguard, Inc.*, 294 S.W.3d 835, 840 (Tex. App.—Dallas 2009, no pet.) (concluding that a party cannot "achieve indirectly through a common law . . . action what he cannot do directly under [a] statute").

But even accepting its amended petition at face value, we conclude that Luminex failed to produce evidence raising a genuine issue of material fact as to each element of its claim. *See Gish*, 286 S.W.3d at 310. To prevail on its fraudulent-transfer claim as alleged in its amended petition, Luminex would have to show, among other things, that under the Settlement Agreement, Meeker had a right to receive the mineral interests owned by JWM and Callaghan and that he transferred this right to DAMFIT. But Luminex offered only speculation and conjecture—not evidence—to support this theory. *See Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 437 (Tex. 1997) ("Speculation cannot create a fact issue." (citing *Duff v. Yelin*, 751 S.W.2d 175, 176 (Tex. 1988))); *Hurley v. Tarrant Cnty.*, 232 S.W.3d 781, 787 (Tex. App.—Fort Worth 2007, no pet.) ("Speculation is not evidence." (citing *Joe v. Two Thirty Nine Joint Venture*,

145 S.W.3d 150, 164 (Tex. 2004))); *cf. Shaw v. Wells Fargo Bank*, No. 02-20-00011-CV, 2020 WL 5241188, at *3 (Tex. App.—Fort Worth Sept. 3, 2020, no pet.) (mem. op.) (holding expert's conclusions "based on mere speculation and conjecture" were "no evidence and [could not] defeat summary judgment"). There is nothing in the record showing that Meeker ever had a right to receive the mineral interests under the Settlement Agreement or that he transferred that benefit to DAMFIT.

Luminex argues that the Settlement Agreement's mere existence coupled with JWM's and Callaghan's transfers of the mineral interests to DAMFIT constitutes more than a scintilla of evidence that Meeker received a benefit under the Settlement Agreement equal in value to the mineral interests and that he transferred that benefit to DAMFIT. But Luminex has offered no proof that whatever benefit Meeker allegedly received under the Settlement Agreement was equal in value to the mineral interests or, alternatively, was tantamount to the mineral interests themselves.

Luminex appears to contend that Meeker received this purported benefit in exchange for the release of his claims against Wade and James for breaching the PRA. But it fails to explain how that purported benefit equated to what it sought to recover. In its appellate briefing, Luminex notes that before the Settlement Agreement's execution, Meeker possessed a right of first refusal and a breach-of-contract claim against Wade and James arising from their prior transfers of the mineral interests to JWM and Callaghan. According to Luminex's theory, Meeker exchanged these assets for a benefit under the Settlement Agreement and then transferred that benefit to

13

DAMFIT.  However, Luminex does not seek to avoid Meeker's purported exchange of his right of first refusal and related breach-of-contract claim for a benefit under the Settlement Agreement; rather it seeks to avoid only his supposed subsequent transfer of the received benefit to DAMFIT.  But even if Meeker had prevailed in his breach-of-contract lawsuit, he would not have been entitled to receive the full value of the mineral interests; rather, he would have merely had the right to purchase them for their fair market value as of March 2015.[8]  It would be unreasonable to infer that Meeker received a greater benefit under the terms of the Settlement Agreement than he would have received had he prevailed at trial.

Further, the Settlement Agreement did not resolve only Meeker and Dan's breach-of-contract lawsuit against Wade and James; rather, as previously noted, it resolved a myriad of disputes involving no less than fifteen people and entities.  The Settlement Agreement's apparent complexity makes it virtually impossible to discern—on this record—what benefits the various parties received, what they gave up in exchange for those benefits, or what their motivations were for settling.

Thus, the Settlement Agreement's mere existence—even combined with the mineral-interest transfers to DAMFIT—is not sufficient circumstantial evidence to raise a genuine issue of material fact regarding the benefit-transfer theory pleaded by Luminex.  *See Univ. of Tex. at El Paso v. Muro*, 341 S.W.3d 1, 5 (Tex. App.—El Paso

---

[8]In the unlikely event that the mineral-interest transfers from Wade and James to JWM and Callaghan were not gifts, Meeker would have had the right to purchase the mineral interests on the same terms governing those transfers.

14

2009, no pet.) ("When circumstantial evidence is so slight that the choice between opposing plausible inferences amounts to nothing more than speculation, it is legally no evidence at all." (citing *Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex. 2001))).

Luminex relies on *Renate Nixdorf GmbH & Co. KG v. TRA Midland Properties, LLC*, No. 05-17-00577-CV, 2019 WL 92038 (Tex. App.—Dallas Jan. 3, 2019, pet. denied) (mem. op.) (*Nixdorf II*),[9] for the proposition that JWM's and Callaghan's mineral-interest transfers to DAMFIT can be avoided under TUFTA as "indirect" transfers. But *Nixdorf II* is highly distinguishable from the present case.

In *Nixdorf II* the Dallas Court of Appeals addressed whether the trial court had erred by granting appellees' pleas to the jurisdiction and Rule 91a motions to dismiss appellants' TUFTA claims. *Id.* at *1. The appellants had judgments against married debtors (the Debtors), who fled to Brazil after transferring to Midland Residential Investment, LLC (MRI) their interests in various entities that collectively owned appellee TRA Apt West TX, L.P. (Apt West). *Id.* Apt West wholly owned appellee TRA Midland Properties, LLC (TRA), which, in turn, owned a portfolio of twenty-one apartment complexes. *Id.* Ultimately, TRA sold the apartment complexes for a net profit of $40.7 million, but the buyer did not pay TRA; rather, the sales proceeds were paid to appellee Pillar Income Asset Management, Inc. (Pillar), which had no

---

[9]In their briefing, the parties refer to a previous appeal arising from the same TUFTA lawsuit as "*Nixdorf I*," *see generally Renate Nixdorf GmbH & Co. KG v. Midland Invs., LLC*, No. 05-14-01258-CV, 2016 WL 1719054 (Tex. App.—Dallas Apr. 28, 2016, pet. dism'd) (mem. op. on reh'g), and to the 2019 case cited above as "*Nixdorf II*." For consistency and ease of discussion, we refer to the 2019 case as *Nixdorf II*.

ownership interest in TRA. *Id.* Appellants brought a TUFTA cause of action against MRI, TRA, Pillar, and the entity that had purchased the apartment complexes. *Id.* at *2.

The trial court granted appellees' pleas to the jurisdiction and Rule 91a motions to dismiss appellants' fraudulent-transfer claims on the ground that they lacked standing as creditors under TUFTA. *Id.* In reversing the trial court's dismissal orders and holding that appellants had standing as creditors, the court of appeals emphasized that appellants had (1) pleaded a cause of action for aiding and abetting the fraudulent transfer against TRA, MRI, and Pillar and (2) asserted that "TRA's corporate veil should be pierced because it [had been] used as a sham to perpetrate fraud." *Id.* at *2. Significantly, the court concluded that appellants' petition alleged sufficient facts to support treating TRA and Apt West as the Debtors' alter egos, meaning that under TUFTA's definitions TRA and Apt West were debtors and appellants were therefore their creditors. *Id.* at *7.

Luminex argues that because—like the appellants in *Nixdorf II*—it pleaded "aiding-and-abetting facts" in its first amended petition, it has "presented summary[-]judgment evidence sufficient to show more than one fraudulent transfer." But unlike *Nixdorf II*, this appeal arises in a summary-judgment posture, and pleading allegations are not competent summary-judgment evidence. *See Weekley Homes v. Paniagua*, 646 S.W.3d 821, 827 (Tex. 2022); *see also Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 818–19 (Tex. 2021) (stating that "pleadings

16

generally do not qualify as summary-judgment 'evidence,' even when they are sworn or verified" and that a "party cannot rely on its *own* pleaded allegations as evidence of facts to support its summary-judgment motion"). Further, even if Luminex could rely on its pleading allegations, because it did not actually plead an aiding-and-abetting cause of action[10] or raise this theory in its summary-judgment response (or even in its motion for new trial), it cannot rely on this theory as a basis to reverse the summary judgment.[11] *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); Tex. R. App. P. 33.1(a); *see also Madeksho v. Abraham, Watkins, Nichols & Friend*, 57 S.W.3d 448, 453 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("We do not consider on appeal grounds not raised in the trial court in opposition to a summary judgment motion." (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 676 (Tex. 1979))).

---

[10]We note that the *Nixdorf II* court's determination that the appellants had standing as creditors was predicated not only on their aiding-and-abetting allegations but also on its conclusion that the appellants had pleaded sufficient facts to show that TRA and Apt West were the Debtors' alter egos. *See Nixdorf II*, 2019 WL 92038, at *7–8. Luminex did not assert that JWM and Callaghan were Meeker's alter egos; this is another significant point of distinction between this case and *Nixdorf II*.

[11]Indeed, the nature of Luminex's fraudulent-transfer theory—which it has made clear is based solely on Meeker's purported transfer to DAMFIT of certain benefits he received under the Settlement Agreement, not JWM's and Callaghan's mineral-interest transfers—would appear to preclude any allegation that JWM or Callaghan aided or abetted the alleged fraudulent transfer (since the purported settlement benefits would have passed directly from Meeker to DAMFIT and would never have passed through JWM's or Callaghan's hands). Thus, we reject Luminex's contention that it pleaded "aiding-and-abetting facts."

17

In sum, Luminex failed to produce more than a scintilla of evidence to support its theory that Meeker received the right to the mineral interests—or a benefit of equal value—under the Settlement Agreement and then transferred that benefit to DAMFIT. Because it failed to present evidence to support its benefit-transfer theory, Luminex likewise failed to create a genuine issue of material fact as to whether it was a creditor with a claim against a debtor–transferor or whether the purported transfer that it sought to avoid even occurred. Thus, the trial court did not err by granting Meeker's and DAMFIT's summary-judgment motions. Accordingly, we overrule Luminex's first, second, and fourth issues. Having overruled these issues, we need not—and therefore do not—address Luminex's fifth issue. *See* Tex. R. App. P. 47.1.

## B. Luminex Forfeited its Complaint That it Lacked Adequate Time for Discovery

In its third issue, Luminex complains that it did not have adequate time for discovery before the trial court granted Meeker's and DAMFIT's no-evidence summary-judgment motions. But Luminex failed to preserve this issue for our review.

Texas Rule of Civil Procedure 166a(i) provides that a party may file a no-evidence summary-judgment motion after an adequate time for discovery has passed. Tex. R. Civ. P. 166a(i). "When a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for

18

continuance." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996); *accord Reule v. Colony Ins. Co.*, 407 S.W.3d 402, 407 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). By failing to do so, a party forfeits its inadequate-time-for-discovery complaint on appeal. *See Reule*, 407 S.W.3d at 407; *see also Ebaseh-Onofa v. McAllen Hosps., L.P.*, No. 13-14-00319-CV, 2015 WL 2452701, at *5 (Tex. App.—Corpus Christi–Edinburg May 21, 2015, no pet.) (mem. op.) (concluding that plaintiff had waived his inadequate-time-for-discovery complaint regarding no-evidence motion for summary judgment because counsel had filed neither a verified motion for continuance nor an affidavit explaining the need for more time).

Although Luminex did not file a motion for continuance, it asserts that it preserved its inadequate-time-for-discovery complaint by attaching to its summary-judgment response an affidavit from its counsel Donna Brown "explaining the need for further discovery."[12] But Brown's affidavit failed to explain why additional time for discovery was needed before the trial court ruled on Meeker's and DAMFIT's summary-judgment motions. Brown's affidavit stated that Meeker and DAMFIT had

---

[12]In its briefing, Luminex makes much of the trial court's comment at the March 2, 2023 hearing on Luminex's second motion to compel that it was "probably a bit early for a no-evidence summary judgment when no documents have been produced." But shortly before making this comment, the trial court told Luminex that "[i]f there's a summary judgment set and if you file a response saying that you think that this is way untimely and you'd like a continuance of it, then I will consider that too." But Luminex never requested a continuance as the trial court suggested. Although Luminex's summary-judgment response stated in conclusory fashion that "the parties have not had adequate time for discovery," it did not explicitly request a continuance and relied upon Brown's affidavit to "explain[] the course of discovery in this case and the need for further discovery."

19

failed to produce requested documents relating to "the value of the mineral interests transferred to DAMFIT," but it never attempted to explain how documents pertaining to the mineral interests' value were material to the issues raised in the summary-judgment motions. *See Reynolds v. MBRV I, LLC*, No. 02-21-00242-CV, 2022 WL 623481, at *4 (Tex. App.—Fort Worth Mar. 3, 2022, no pet.) (mem. op.) ("An affidavit seeking a continuance [of a summary-judgment hearing] to obtain additional evidence must describe the evidence sought, explain its materiality, and demonstrate that the party requesting the continuance has used due diligence to timely obtain the evidence." (citing *D.R. Horton–Tex., Ltd. v. Savannah Props. Assocs.*, 416 S.W.3d 217, 222–23 (Tex. App.—Fort Worth 2013, no pet.))). Indeed, because none of the challenged elements of Luminex's TUFTA claim relate to the transferred assets' value, *see Nat'l Cleaners, LLC*, 2022 WL 3973591, at *4, judicial imagination cannot fathom how Luminex could have shown the materiality of such documents. Thus, Brown's affidavit failed to adequately explain the need for further discovery. *See Reynolds*, 2022 WL 623481, at *4.

Because Luminex did not file a verified motion for continuance and because Brown's affidavit did not explain the need for additional discovery time before the trial court ruled on the summary-judgment motions, we conclude that Luminex has forfeited its inadequate-time-for-discovery complaint. *See Ebaseh-Onofa*, 2015 WL 2452701, at *5; *Reule*, 407 S.W.3d at 407; *Davis v. West*, 317 S.W.3d 301, 313–14 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Blanche v. First Nationwide Mortg. Corp.*,

20

74 S.W.3d 444, 450–51 (Tex. App.—Dallas 2002, no pet.).

Further, even if we were to assume—without deciding—that Luminex had preserved its inadequate-time-for-discovery complaint, we cannot conclude, based on the relevant factors, that the trial court abused its discretion by entertaining Meeker's and DAMFIT's summary-judgment motions. *See Carter v. MacFadyen*, 93 S.W.3d 307, 311 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (applying abuse-of-discretion standard to Rule 166a(i) inadequate-time-for-discovery complaint); *see also D.R. Horton–Tex., Ltd.*, 416 S.W.3d at 223 (listing factors to be considered when determining whether a trial court permitted adequate time for discovery, including, inter alia, "the length of time the case was active," "the amount of time the no-evidence motion was on file," and "the nature of the evidence necessary to controvert the no-evidence motion"). When Meeker filed his summary-judgment motion, Luminex's lawsuit had been pending for more than a year; by the time the trial court granted the motion, the discovery period had closed, and the case had been pending for nearly fifteen months. *See Gomes v. Casey*, No. 02-22-00003-CV, 2022 WL 3464611, at *3 (Tex. App.—Fort Worth Aug. 18, 2022, no pet.) (mem. op.) (holding that appellant had had adequate time for discovery because appellees' summary-judgment motion had been filed more than six months after the commencement of the lawsuit and had been on file for twenty-seven additional days before it was granted); *Rest. Teams Int'l v. MG Sec. Corp.*, 95 S.W.3d 336, 340 (Tex. App.—Dallas 2002, no pet.) (holding there had been adequate time for discovery where case had

21

been on file seven months and motion had been on file for twenty-six days before it was granted). Additionally, even if we were to accept Luminex's assertion that the Settlement Agreement and related documents were material to its case, Meeker and DAMFIT raised colorable arguments that these documents were confidential or privileged and therefore not discoverable.[13] Despite the uncertainty regarding whether the Settlement Agreement and related documents were, in fact, discoverable, Luminex never sought to obtain the evidence necessary to prove the elements of its TUFTA claim by other means, such as deposing Meeker; his brother Dan, who was Meeker's co-plaintiff in the breach-of-contract lawsuit pertaining to the PRA; JWM; or Callaghan. *See Sayles v. Senior Care Res., Inc.*, No. 02-20-00124-CV, 2021 WL 62130, at *7 (Tex. App.—Fort Worth Jan. 7, 2021, no pet.) (mem. op.) (noting that "[a] motion for continuance of a summary judgment hearing is subject to the same rules applicable to a trial continuance" and admonishing that "[t]he failure of a litigant to diligently utilize the Rules of Civil Procedure for discovery purposes will not authorize the granting of a continuance").

We overrule Luminex's third issue.

---

[13]At the hearing on Luminex's first motion to compel, the trial court recognized the strength of Meeker's and DAMFIT's confidentiality and privilege arguments, asking Luminex's counsel, "Why do you think that you ought to be entitled to read letters between lawyers in another case involving a settlement when settlements are completely privileged anyway, and it's another case? I can't even fathom how you could possibly get that."

### III. CONCLUSION

Having overruled Luminex's dispositive issues, we affirm the trial court's orders granting Meeker's and DAMFIT's summary-judgment motions.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: September 26, 2024